**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED JULY 26, 2011

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 140510

JOHNNY BONILLA-MACHADO,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

This case presents three issues for review. First, we review whether defendant was coerced by the trial court and defense trial counsel into forgoing his right to testify. Second, we review whether an offense that is statutorily designated as a "crime against public safety" may also be considered a "crime against a person" to establish a continuing pattern of criminal behavior for purposes of scoring offense variable (OV) 13, MCL 777.43. Finally, we review whether defendant is entitled to resentencing as a matter of law in light of the trial court's erroneous statement that it was statutorily bound to enhance defendant's maximum sentences.

We first conclude that neither the trial court nor defense trial counsel coerced defendant into forgoing his right to testify. Instead, the record shows that defense counsel advised defendant of the risks of testifying and that, ultimately, defendant himself made the decision not to testify. The trial court merely confirmed defendant's decision. Accordingly, there was no error on this issue, and defendant is not entitled to a new trial.

Next, we hold that the Court of Appeals erroneously concluded that even though assault of a prison employee[1] is statutorily designated as a crime against public safety, MCL 777.16j, it can also be considered a crime against a person for purposes of scoring OV 13 because a prison employee is a "person." We hold that the six named offense category designations used in MCL 777.5 and 777.11 through 777.19 apply to the scoring of offense variables and, therefore, a felony designated as a "crime against public safety" may not be used to establish a "pattern of felonious criminal activity involving 3 or more crimes against a person," MCL 777.43(1)(c), for purposes of scoring OV 13. Because this changes defendant's sentencing guidelines range, we agree with defendant that this matter must be remanded for resentencing. See *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006).

Finally, we hold that the trial court erred when it stated that it was bound by law to enhance defendant's maximum sentences. Application of the enhanced maximum sentence is discretionary, not mandatory. *People v Turski*, 436 Mich 878 (1990). The Court of Appeals acknowledged the error and remanded to allow the trial court to clarify

---

[1] MCL 750.197c.

2

whether the trial court knew it had discretion to enhance the maximum sentences or to redetermine the maximum sentences after using its discretion. Because the trial court, on remand, has already resentenced defendant in accordance with the Court of Appeals' remand order, this issue is now moot.

Accordingly, we reverse the judgment of the Court of Appeals in part and remand this matter to the trial court for resentencing. On remand, we instruct the trial court to assess zero points for OV 13. We affirm the judgment of the Court of Appeals in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from events that occurred in November 2007 while defendant was incarcerated in the Bellamy Creek Correctional Facility in Ionia. Defendant was serving prison terms for unarmed robbery and attempted carjacking. While in his cell, defendant assaulted two corrections officers by overflowing his toilet and then splashing the toilet water on the corrections officers as they made their respective rounds approximately 30 minutes apart.

Defendant was charged with two counts of assaulting a prison employee and was found guilty by a jury on both counts. Defendant did not testify at his trial. MCL 750.197c(1) sets the maximum sentence of imprisonment for assaulting a prison employee at five years, and MCL 769.10(1)(a) allows a trial court to enhance the maximum sentence imposed for a subsequent felony conviction by not more than 1½ times the statutory maximum. The trial court indicated that it was bound by statute to enhance the sentences and sentenced defendant as a second-offense habitual offender to

3

concurrent terms of 30 to 90 months (2½ to 7½ years) of imprisonment for each conviction. Defendant objected to the enhanced maximum sentences.

Defendant also objected to the minimum sentence range, specifically the scoring of OV 13. OV 13 addresses patterns of felonious conduct within a five-year period, including the sentencing offense.[2] The trial court assessed 10 points for OV 13, which are the total points prescribed for an offense that "was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property . . . ."[3]

In his appeal of right, defendant argued that the trial court and defense counsel had coerced him into forgoing his right to testify, that the trial court had erroneously scored OV 13, and that the trial court had erred by failing to exercise its discretion when setting his maximum sentences. In an unpublished opinion per curiam, the Court of Appeals affirmed defendant's convictions but remanded for resentencing.[4] The Court of Appeals concluded that defendant made his decision not to testify after he had been properly reminded of the hazards of doing so.[5] Additionally, the Court of Appeals concluded that the trial court had erred by assessing 10 points for OV 13 and sua sponte directed the assessment of 25 points for this variable instead.[6] Finally, the Court of Appeals

---

[2] MCL 777.43(2)(a).

[3] MCL 777.43(1)(d).

[4] *People v Bonilla-Machado*, unpublished opinion per curiam of the Court of Appeals, issued December 15, 2009 (Docket No. 287605).

[5] *Id*. at 2-3.

[6] *Id*. at 4.

remanded the matter to the trial court to either clarify that it knew it had discretion in imposing the enhanced maximum sentences or to redetermine the maximum sentences after using its discretion.[7]

Defendant sought leave to appeal in this Court, and this Court heard oral argument on defendant's application.[8]

## II. STANDARD OF REVIEW

This Court reviews unpreserved claims of constitutional error under the plain-error standard.[9] The interpretation and application of the legislative sentencing guidelines, MCL 777.1 *et seq*., involve legal questions that this Court reviews de novo.[10]

---

[7] *Id*. at 3. In the Court of Appeals, defendant also challenged the scoring of OV 9, which addresses the number of victims involved in an offense. The trial court had assessed 10 points for OV 9, which are the total points prescribed for an offense involving "2 to 9 victims who were placed in danger of physical injury . . . ." MCL 777.39(1)(c). Citing *People v McGraw*, 484 Mich 120; 771 NW2d 655 (2009), the Court of Appeals concluded that the trial court had erred by aggregating the victims from the two separate assault incidents for purposes of scoring OV 9. *Bonilla-Machado*, unpub op at 3-4.

Defendant additionally argued that his counsel was ineffective for failing to properly advise him regarding his right to testify at trial and for failing to challenge the scoring of OV 9 and OV 13. The Court of Appeals concluded that counsel had not been ineffective with regard to advising defendant of his right to testify and found it unnecessary to consider counsel's effectiveness with regard to the OVs because it remanded for resentencing. *Id*. at 5. We do not disturb the Court of Appeals' holdings on these issues.

[8] *People v Bonilla-Machado*, 486 Mich 907 (2010).

[9] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

[10] *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

## III. ANALYSIS

## A. DEFENDANT'S RIGHT TO TESTIFY

Defendant first argues that his right to testify was violated because he was coerced by the trial court and defense trial counsel into giving up his stated desire to testify. We disagree. A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.[11] Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant.[12]

At his jury trial, the following exchange took place regarding defendant's decision whether to testify:

> *The Court*: [D]oes your client want to testify?
>
> [*Defense Counsel*]: That's what I'm trying to find out right now, your Honor.
>
> *The Court*: . . . He should have made his decision before now.
>
> [*Defense Counsel*]: He's going to testify, your Honor.
>
> *The Court*: Would you like to explain his rights to him on the record?
>
> [*Defense Counsel*]: Yes, I would, your Honor. John, it's going to be your choice to take the stand here today?
>
> *The Defendant*: Yes.
>
> [*Defense Counsel*]: You understand if you take the stand today anything you say on the stand can be used against you? . . . Do you

---

[11] *Rock v Arkansas*, 483 US 44, 51-52; 107 S Ct 2704; 97 L Ed 2d 37 (1987).

[12] *Jones v Barnes*, 463 US 745, 751; 103 S Ct 3308; 77 L Ed 2d 987 (1983).

understand?  You have a right not to take the stand.  So are you going to take the stand or not take the stand?

     *The Defendant*: No.

     [*Defense Counsel*]: Your Honor, he's indicated to me he's not going to take the stand.  Is that right Johnny?  You're not going to take the stand?

     *The Defendant*: No.

     [*Defense Counsel*]:  But I've explained to you, if you take the stand, anything you say can be held against you.  Do you understand that?

     *The Defendant*: Yes.

     [*Defense Counsel*]: So it's your choice not to take the stand here today?

     *The Defendant*: I'm not going to go up there.

     *The Court*: Mr. Machado, do you want to testify today?

     *The Defendant*: No.

Thus, the record reflects that defendant had previously decided that he might want to testify.  Counsel advised him on the record that it was his decision to do so, but also warned him of the risks involved.  Specifically, counsel advised defendant that anything he might say on the stand could be used against him.  Defendant argues that this advice was inappropriate because not *everything* could be used against him.  Defendant claims that if he had testified that he was innocent of the charges, the prosecutor could not possibly have used that against him.  Again, we disagree.  Anything defendant might have said on the stand would have been subject to cross-examination designed for use against him.

7

Both defense counsel and the trial court sought clarification from defendant regarding whether he wished to testify. Defendant expressly acknowledged on the record that he understood it was his choice whether to testify and that he understood that anything he testified to could be used against him. Defendant explicitly and repeatedly stated his decision not to testify. The record does not reveal any coercive actions by counsel or the trial court. Instead, the record illustrates that defendant made a rational choice not to testify after he was warned of the risks involved. In light of the facts on the record, we conclude that defendant was not denied his right to testify and there is no error requiring reversal. We affirm the judgment of the Court of Appeals on this issue.

## B. OFFENSE VARIABLE 13: CONTINUING PATTERN OF CRIMINAL BEHAVIOR

Next, defendant argues that the Court of Appeals erroneously ordered that the score for OV 13 be increased from 10 points to 25 points. We agree with defendant and conclude that both the trial court and the Court of Appeals scored OV 13 incorrectly because zero points should have been assessed.

In deciding this issue, we must interpret the relevant statutes within the sentencing guidelines chapter of the Code of Criminal Procedure.[13] When interpreting statutes, this Court must "determine and give effect to the Legislature's intent."[14] The words used in the statute are the most reliable indicator of the Legislature's intent and should be

---

[13] MCL 777.1 *et seq.*

[14] *People v Lowe*, 484 Mich 718, 721; 733 NW2d 1 (2009), citing *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

8

interpreted on the basis of their ordinary meaning and the context within which they are used in the statute.[15]  In interpreting a statute, this Court avoids a construction that would render any part of the statute surplusage or nugatory.[16]  Similarly, when determining how offense variables should be scored, this Court reads the sentencing guideline statutes as a whole.[17]

MCL 777.5, a provision within the sentencing guidelines, lists six statutory offense categories for felonies: (1) crimes against a person, (2) crimes against property, (3) crimes involving a controlled substance, (4) crimes against public order, (5) crimes against public trust, and (6) crimes against public safety.  MCL 777.11 through 777.19 place each felony covered by the guidelines within one of these six offense categories.  These offense categories are used to determine which of the OVs to score for each crime[18] *and* how those OVs should be scored.[19]  While MCL 777.5 provides abbreviated designations for the offense categories, the fully named offense categories are used uniformly and consistently throughout the sentencing guidelines.

---

[15] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[16] *McGraw*, 484 Mich at 126, citing *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

[17] *McGraw*, 484 Mich at 124-125.

[18] MCL 777.22.

[19] See, e.g., MCL 777.42 (scoring of OV 12 for contemporaneous felonious criminal acts) and MCL 777.43 (scoring of OV 13 for a continuing pattern of criminal behavior).

MCL 777.43, also contained within the sentencing guidelines, governs OV 13 and provides:

(1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age .................................................................. 50 points

(b) The offense was part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang . 25 points

(c) *The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person.* ................................. 25 points

(d) *The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403* ............................................................................. 10 points

(e) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more violations of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403 ......................................................... 10 points

(f) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against property .................................... 5 points

(g) *No pattern of felonious criminal activity existed* ............. 0 points

(2) All of the following apply to scoring offense variable 13:

(a) *For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.*

(b) The presence or absence of multiple offenders, the age of the offenders, or the degree of sophistication of the organized criminal group is not as important as the fact of the group's existence, which may be reasonably inferred from the facts surrounding the sentencing offense.

(c) Except for offenses related to membership in an organized criminal group or that are gang-related, do not score conduct scored in offense variable 11 or 12.

(d) Score 50 points only if the sentencing offense is first degree criminal sexual conduct.

(e) Do not count more than 1 controlled substance offense arising out of the criminal episode for which the person is being sentenced.

(f) Do not count more than 1 crime involving the same 1 [sic] controlled substance. For example, do not count conspiracy and a substantive offense involving the same amount of controlled substances or possession and delivery of the same amount of controlled substances. [Emphasis added.]

As specifically set forth in the language of MCL 777.43(2)(a), in order to assess points under OV 13 for a continuing pattern of criminal behavior, a trial court must count all relevant crimes within a five-year period, including the sentencing offense at issue. Moreover, according to the plain language of the statute, to assess 10 points for OV 13, a person must have committed three or more "crimes against a person or property" or violations of either MCL 333.7401(2)(a)(*i*) through (*iii*) or MCL 333.7403(2)(a)(*i*) through (*iii*), which relate to crimes involving controlled substances. To assess 25 points when crimes related to gang activity are not counted, there must be three or more crimes against a person. The issue before us is whether the phrases "crimes against a person" and "crime against a person or property" used in MCL 777.43 are limited to those offenses designated as such by the Legislature in MCL 777.11 through 777.19.

11

In this case, defendant's relevant criminal history includes two crimes that are statutorily designated as "crimes against a person" and one crime that is statutorily designated as a "crime against public safety" under MCL 777.11 through 777.19.[20] No claim has been made that these crimes were gang-related. The trial court assessed 10 points for OV 13. On appeal in the Court of Appeals, defendant argued that zero points should have been assessed for OV 13 because his current crimes, two counts of assault of a prison employee, are designated by statute as "crimes against public safety," not "crimes against a person or property," and he therefore had not committed "3 or more crimes against a person or property," as required to score OV 13 at 10 points.[21] The Court of Appeals rejected defendant's argument and instead concluded that the score for OV 13 should be increased from 10 points to 25 points. The Court of Appeals explained that "[a]lthough MCL 777.16j indicates that assault of a prison guard is a crime against public safety, this offense is *also* a crime against a person because, obviously, a prison guard is a person."[22] The Court of Appeals reasoned that the explicit statutory offense category designations in MCL 777.11 through 777.19 do not limit a sentencing court's

---

[20] Defendant has prior convictions for attempted carjacking and unarmed robbery, which are both statutorily categorized as crimes against a person. MCL 777.16y. Defendant also has a prior unrelated conviction for assaulting a prison employee, which is statutorily categorized as a crime against public safety. MCL 777.16j. As the statute governing OV 13 indicates, the sentencing offenses must be considered as well. Both of the sentencing offenses at issue are assault of a prison employee, which is, again, categorized as a crime against public safety.

[21] MCL 777.43(1)(d).

[22] *Bonilla-Machado*, unpub op at 4.

interpretation of the named offense category when scoring offense variables. We disagree with this reasoning because it does not comply with the express language of the sentencing guidelines. We instead hold that the six named offense categories in MCL 777.5 are statutorily defined phrases that encompass only those specific crimes designated as such by the Legislature in MCL 777.11 through 777.19.

MCL 777.21 explicitly sets forth instructions for scoring the sentencing guidelines and provides, in relevant part:

> (1) Except as otherwise provided in this section, for an offense enumerated in [MCL 777.11 through 777.19], determine the recommended minimum sentence range as follows:
>
> (a) *Find the offense category for the offense from* [*MCL 777.11 through 777.19*]. From [MCL 777.22], *determine the offense variables to be scored for that offense category* and score only those offense variables for the offender as provided in [MCL 777.31 through 777.49a]. Total those points to determine the offender's offense variable level. [Emphasis added.]

MCL 777.21(1)(a) explicitly instructs a court to first "[f]ind the *offense category* for the offense from" MCL 777.11 through 777.19 and then "determine the offense variables to be scored for that *offense category* . . . ."[23] MCL 777.11 through 777.19 include an extensive list that designates which of the six offense categories each felony covered by the guidelines falls under. Thus, the plain language of MCL 777.21 mandates that the statutorily named offense categories and the distinct designation system for felonies are the starting points for proper application of the sentencing guidelines. The

---

[23] Emphasis added.

use of the named offense categories throughout the sentencing guidelines chapter indicates legislative intent to have the offense categories applied in a uniform manner, including when they are applied in the offense variable statutes.

The Court of Appeals' opinion would permit courts to ignore the explicit statutory offense categories and designate an offense as a "crime against a person" sua sponte whenever a "person" is involved in a crime. We cannot agree with that interpretation. The Court of Appeals' conclusion is inconsistent with the well-accepted rules of statutory construction because it is unsupported by the clear and unambiguous language of MCL 777.21.

The Legislature's directive is clear. MCL 777.43 specifically provides that zero to 50 points be assessed for OV 13 in accordance with a defendant's criminal history, dependent upon a sufficient number of crimes falling within specifically listed offenses and offense categories. In this case, the combination of designated crimes needed to assess 5 to 50 points for OV 13 is not present, and the only allowable score under the categories designated in the statute is zero points. Moreover, nothing in the language of MCL 777.43 allows courts to consider crimes falling within other designated offense categories to establish a continuing pattern of criminal behavior.

It is also important to recognize that while the Legislature directed that OV 13 be scored for each offense category,[24] it also explicitly mandated that *zero* points be assessed

---

[24] MCL 777.22.

14

for OV 13 when a continuing pattern of criminal behavior is not shown.[25] Thus, in MCL 777.43(1)(g), the Legislature unambiguously directed *how* to score OV 13 when a defendant did not engage in the requisite pattern of criminal behavior. Clearly, the score for an offense variable can—and sometimes, as here, will—be zero points. This does not mean that the variable was not scored.[26]

Moreover, the Legislature is free to group together, or to separate, crimes under categorical headings in order to accomplish its desired intent. The Legislature uses categories to ensure that crimes it wishes to treat in a particular manner are, in fact, treated in that manner. If the Legislature had intended to allow courts to consider crimes within *all* the offense categories when scoring OV 13, it could have expressly included additional offense categories or simply stated that all crimes could be considered to establish a continuing pattern of criminal behavior.[27] For example, MCL 777.42, which

---

[25] MCL 777.43(1)(g).

[26] We find no merit in the argument that the sole purpose of the offense categories is to determine which of the 20 offense variables are to be scored. As we previously indicated, the offense categories are used to determine not only which offense variables to score but also *how* those variables are to be scored. While MCL 777.5 provides abbreviated designations for the offense categories, the language of the defining terms themselves—"crimes against a person" and "crimes against property," for example—are employed *outside* this provision. Our reading of the relevant statutory provisions gives effect to the straightforward language contained in those provisions and appropriately allows the variables that are required to be considered to be scored properly. Our reading also recognizes that the score for OVs will at times be zero points in accordance with the statutory language.

[27] We are not persuaded that the language in MCL 777.43(2)(f) prohibiting counting a drug conspiracy offense along with a substantive drug offense when scoring OV 13 affects our analysis. MCL 777.43(2)(f) indicates nothing more than the Legislature's

governs OV 12 and addresses contemporaneous felonious criminal acts, requires the assessment of 25 points for "[t]hree or more contemporaneous felonious criminal acts involving *crimes against a person*," but 10 points for "[t]hree or more contemporaneous felonious criminal acts involving *other crimes*[.]"[28] The plain language of MCL 777.42 indicates the Legislature's express intent to allow sentencing courts to consider crimes within *all* the offense categories when scoring OV 12. MCL 777.43 does not include any similar language for purposes of scoring OV 13. Instead, its plain language is limited to specific statutory violations and specific offense categories. Therefore, both the trial court and the Court of Appeals erred in scoring OV 13, and on remand OV 13 must be scored at zero points.

## C. ENHANCED MAXIMUM SENTENCE

Finally, defendant argues that the trial court failed to exercise discretion in setting the maximum sentences for a second-offense habitual offender. We agree. The statutory maximum sentence of imprisonment for assault of a prison employee is five years.[29] However, a court is given discretion to enhance the maximum sentence for subsequent felony convictions.[30] MCL 769.10(1) governs punishment for subsequent felonies, and subdivision (a) employs the term "may" when referring to the imposition of an enhanced

intent to clarify that a conspiracy involving controlled substances shall not be counted when scoring OV 13.

[28] MCL 777.42(1)(a) and (c) (emphasis added).

[29] MCL 750.197c(1).

[30] MCL 769.10(1)(a).

sentence. In *Turski*, this Court clarified that imposing an enhanced maximum sentence is discretionary, not mandatory. In its order in *Turski* remanding the case for resentencing, this Court stated:

> A trial court, when sentencing a defendant as an habitual offender, must exercise its discretion in setting the maximum sentence, that is, it is not required by law to increase the maximum sentence. The sentencing court, in the instant case, indicated that it was required "as a matter of law" to enhance the defendant's maximum sentences.[31]

In this case, the trial court imposed the enhanced maximum sentences and stated: "That's the sentence. That's what the statute says it has to be." As in *Turski*, the trial court erroneously asserted that it was bound by law to enhance the maximum sentences. Accordingly, the Court of Appeals remanded the case to allow the trial court to either clarify that it understood it had discretion in imposing the enhanced sentences or to redetermine the maximum sentences after properly exercising its discretion. We note that during the pendency of defendant's appeal in this Court, the trial court resentenced him. Because the trial court has already resentenced defendant and indicated at resentencing that, in its discretion, defendant's maximum sentences should be enhanced, we conclude that this issue need not be addressed by the trial court on remand

## IV. CONCLUSION

Neither the trial court nor defense trial counsel coerced defendant into forgoing his right to testify. Instead, the record shows that defense counsel advised defendant of the

---

[31] *Turski*, 436 Mich at 878; see also *People v Green*, 205 Mich App 342, 346-347; 517 NW2d 782 (1994).

risks of testifying and that, ultimately, defendant himself made the decision not to testify. Accordingly, there was no error on this issue, and defendant is not entitled to a new trial.

However, we agree with defendant that this matter must be remanded for resentencing. Both the trial court and the Court of Appeals incorrectly scored OV 13. The Court of Appeals erroneously concluded that even though assault of a prison employee is statutorily designated as a "crime against public safety," MCL 777.16j, it can also be considered a "crime against a person" for purposes of scoring OV 13 because a prison employee is a "person." We hold that the six named offense categories in MCL 777.5 and 777.11 through 777.19 apply to the scoring of offense variables and, therefore, a felony statutorily designated as a "crime against public safety" may not be used to establish a pattern of felonious criminal activity involving three or more crimes against a person for purposes of scoring OV 13.

In addition, the trial court erred by stating that it could not exercise discretion in enhancing defendant's maximum sentences. But because defendant has already been resentenced, and the trial court indicated at resentencing that, in its discretion, defendant's maximum sentences should be enhanced, we conclude that it is unnecessary for the trial court to address this issue on remand.

For these reasons, we reverse the judgment of the Court of Appeals in part and remand this matter to the trial court for resentencing. On remand, we instruct the trial

court to assess zero points for OV 13.  We affirm the judgment of the Court of Appeals in all other respects.

Diane M. Hathaway
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Mary Beth Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                     No. 140510

JOHNNY BONILLA-MACHADO,

      Defendant-Appellant.

_____

MARKMAN, J. (*concurring*).

I fully concur in the majority's analysis and holding that defendant was not denied his right to testify at his trial and that zero points should be assessed for offense variable (OV) 13. I write separately to respond to the partial dissent, which concludes that 25 points should be assessed for OV 13.

MCL 777.43, which governs the scoring of OV 13, provides, in pertinent part:

(1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age ……………………………………………… 50 points

(b) The offense was part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang ………………………………………………………….. 25 points

(c) *The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person* …………………….. *25 points*

(d) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403 …………………………………………………………... 10 points

(e) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more violations of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403 …………………………………..... 10 points

(f) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against property ……………………… 5 points

(g) No pattern of felonious criminal activity existed ……...... 0 points

(2) All of the following apply to scoring offense variable 13:

\* \* \*

(f) Do not count more than 1 crime involving the same . . . controlled substance. For example, do not count conspiracy and a substantive offense involving the same amount of controlled substances or possession and delivery of the same amount of controlled substances. [Emphasis added.]

The Legislature has categorized each felony covered by the sentencing guidelines into one of six offense categories-- crimes against a person, crimes against property, crimes involving a controlled substance, crimes against public order, crimes against public trust, and crimes against public safety. MCL 777.5; MCL 777.11 through 777.19. The sentencing offense in this case-- assault of a prison employee-- has been explicitly categorized by the Legislature as a "crime against public safety." MCL 777.16j. The prosecutor argues that 25 points should be assessed for OV 13 pursuant to MCL 777.43(1)(c), which provides that 25 points should be assessed for OV 13 if the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or

2

more crimes against a person." However, because the sentencing offense here is expressly a "crime against public safety," rather than a "crime against a person," it cannot be said to have been "part of a pattern of felonious criminal activity involving 3 or more crimes against a person," and thus 25 points cannot be assessed for OV 13.

Although the partial dissent's argument that 25 points should be assessed for OV 13 has superficial appeal because a prison employee is obviously a "person," the equally obvious flaw in this argument is that the Legislature has stated that an assault of a prison employee is a "crime against public safety," not a "crime against a person." In other words, although the partial dissent's argument is consistent with the common understanding of the phrase "crime against a person," it is not consistent with the Legislature's stated understanding of this phrase. And it is well established that the Legislature is free to define terms as it sees fit. *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217, 228 n 3; 683 NW2d 639 (2004) ("[T]he Legislature has the discretion to define [terms] in any way it chooses . . . ."). Accordingly, the Legislature is free to define "crimes against a person" to encompass crimes that might not be understood in common parlance to constitute "crimes against a person" and to exclude crimes that might be understood in common parlance to constitute "crimes against a person." That is, the Legislature is free to group together, or to separate, crimes into categories as it sees fit for its purposes. Particularly in the context of the sentencing guidelines, these categories serve as a convenient shorthand to ensure that crimes the Legislature wishes to treat in a similar manner are, in fact, treated in a similar manner, and that crimes the Legislature wishes to treat in a dissimilar manner are, in fact, treated in a dissimilar manner.

The partial dissent argues that the "*sole purpose* served by the offense categories in our legislative sentencing scheme is determining which of the 20 offense variables are to be scored, as not every felony requires the scoring of every offense variable." *Post* at 4 (emphasis added). Although I agree that *one* of the purposes served by the offense categories is to determine which of the offense variables are to be scored, it is clearly not accurate that this is the "sole purpose" served by the offense categories. Chapter XVII of the Code of Criminal Procedure is entitled "Sentencing Guidelines." Part 1 of this chapter designates the six offense categories; part 2 designates which felonies are included in which offense categories; part 3 designates which offense variables to score for each offense category; and part 4 sets forth all the offense variables, including, of course, OV 13. Given that the offense categories are set forth within the very same chapter of the Code of Criminal Procedure as the offense variables, and that this chapter is specifically entitled "Sentencing Guidelines," it seems reasonably clear that the Legislature intended the offense categories to be used consistently throughout the chapter. That is, if an offense is considered a "crime against public safety" for purposes of parts 2 and 3, it should also be considered a "crime against public safety" for purposes of part 4.

As it applies to the instant case, part 2 of the sentencing guidelines instructs us that an assault of a prison employee is a "crime against public safety." MCL 777.16j. Part 3 instructs us to score OV 13 because MCL 777.22(5) states, "For all crimes against public safety, score offense variable[] . . . 13 . . . ." And part 4, specifically MCL 777.43(1)(c), instructs us not to assess 25 points for OV 13 because 25 points are to be assessed pursuant to this provision only when the sentencing offense is "part of a pattern of

4

felonious criminal activity involving 3 or more crimes against a person," and assault of a prison employee is not a "crime against a person" since part 2 has already instructed us that assault of a prison employee is a "crime against a public safety."

The partial dissent, however, would hold that while an assault of a prison employee is a "crime against public safety" for purposes of parts 2 and 3, it is a "crime against a person" for purposes of part 4. Contrary to the partial dissent, nothing within any part of chapter XVII instructs us to construe the language "crime against a person" in such an inconsistent manner. Part 2 instructs us what comprises "crimes against a person," and there is no obvious reason to depart from this understanding once we reach part 4. In other words, there is no basis for concluding, as the partial dissent does, that although an assault of a prison employee is not a "crime against a person" for purposes of parts 2 and 3, it *is* such a crime for purposes of part 4.

The partial dissent asserts that its basis for doing this is because "the plain language limits the applicability of MCL 777.5 to 'part 2' . . . ." *Post* at 5 n 12. However, this is not so. MCL 777.5 does not in any way limit itself to part 2. Rather, MCL 777.5, which is found in part 1 of chapter XVII, lists the six offense categories and states that "[t]he offense categories are designated in part 2 of this chapter . . . ." As explained earlier, part 2 designates which felonies fall into which offense categories. Thus, MCL 777.5 instructs us that "the offense categories are designated in part 2"; it does not state that the offense categories are only to be used in part 2. Indeed, such a limitation would not even make sense because part 2 only tells us which felonies fall into which offense categories. If the offense categories only applied to part 2, the offense categories would serve *no* purpose at all. Indeed, the partial dissent's assertion that the

5

offense categories only apply to part 2 is patently inconsistent with its own conclusion that the "*sole purpose* served by the offense categories in our legislative sentencing scheme is determining which of the 20 offense variables are to be scored," *post* at 4 (emphasis added), because it is part 3, not part 2, of chapter XVII that instructs us which offense variables are to be scored for each offense category. That is, if the offense categories are only to be used in part 2, as the partial dissent asserts, why does that same opinion also allow use of the offense categories in part 3? And given that the partial dissent allows use of the offense categories in parts 2 and 3, why does it not also allow use of the offense categories in part 4?

The partial dissent suggests that it would allow use of the offense categories in part 4 if, for example, MCL 777.43(1)(f) stated "that a court should assess 5 points when the offense was part of a pattern of felonious criminal activity involving three or more crimes *classified as* a crime against property or in the offense category of crimes against a person." *Post* at 8-9 (emphasis in the original). However, as this Court explained in *Robinson v City of Lansing,* 486 Mich 1, 16; 782 NW2d 171 (2010), "the Legislature is not required to be overly repetitive in its choice of language." That is, the Legislature should not be required to repetitively restate "classified as a crime against property" everywhere throughout the entire chapter. Such repetition is not required of the Legislature in order for it to communicate its intentions. Instead, I believe that a reasonable person reading this chapter would understand quite clearly that "crimes against a person" means those "crimes *classified as* crimes against a person." Indeed, even the partial dissent concedes that "crimes against a person" in part 2 means "crimes *classified as* crimes against a person." In view of this concession, it is difficult to

6

understand why the partial dissent believes that "crimes against a person" in part 4 of this very same chapter means something other than "crimes *classified as* crimes against a person." It is entirely commonsensical that "unless the Legislature indicates otherwise, when it repeatedly uses the same phrase in a statute, that phrase should be given the same meaning throughout the statute." *Robinson,* 486 Mich at 17, citing *Paige v Sterling Hts*, 476 Mich 495, 520; 720 NW2d 219 (2006) (indicating that "absolutely identical phrases in our statutes" should have identical meanings); see also *People v Wiggins,* 289 Mich App 126, 131; 795 NW2d 232 (2010) ("Given that identical language in various provisions of the same act must be construed identically, [*People ex rel Simmons v Munising Twp,* 213 Mich 629, 633; 182 NW 118 (1921)], we conclude that only crimes with the offense category designated as 'person' under MCL 777.11 to MCL 777.18 can be considered 'crimes against a person' for purposes of scoring OV 12 pursuant to MCL 777.5 and MCL 777.6.").

Contrary to the partial dissent, the majority's analysis does not render the Legislature's command in MCL 777.22(5) to score OV 13 "[f]or all crimes against public safety" "nugatory." *Post* at 1. Nor does the majority "disregard[] unequivocal proof that the Legislature 'intended to allow courts to consider crimes within all the offense categories when scoring OV 13.'" *Post* at 6-7, quoting *ante* at 15. Instead, the partial dissent fails to grasp the significant distinction between the Legislature directing sentencing courts to score OV 13 "[f]or all crimes against public safety," and indeed, for *all* crimes, MCL 777.22, and the Legislature directing sentencing courts to count all crimes as "crimes against a person" for purposes of determining how many points should be assessed under OV 13. Although the Legislature has directed the former, it has not

7

directed the latter. That is, while the Legislature has directed sentencing courts to always score OV 13, regardless of the sentencing offense, it has not directed sentencing courts to always assess 25 points for OV 13, regardless of the sentencing offense. Instead, the Legislature has directed sentencing courts to only assess 25 points under MCL 777.43(1)(c) when the sentencing "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" Therefore, when the sentencing offense is a "crime against public safety," as in this case, MCL 777.22(5) directs us to score OV 13, and MCL 777.43(1)(c) directs us to not assess 25 points for OV 13 because 25 points can only be assessed under this provision when the sentencing offense is a "crime against a person." And because no other provision of MCL 777.43(1) is applicable, MCL 777.43(1)(g) directs us to assess zero points for OV 13.[1] When zero

_____

[1] The partial dissent argues that zero points cannot be assessed for OV 13 here because MCL 777.43(1)(g) directs us to assess zero points for OV 13 only when "[n]o pattern of felonious criminal activity existed," and such a pattern clearly existed here. However, the partial dissent again fails to read the statute in context. Although defendant may have engaged in a "pattern of felonious criminal activity" as that phrase is commonly understood, he did not engage in the kind of "pattern of felonious criminal activity" that the Legislature has indicated is deserving of having points assessed under OV 13. That is, defendant did not engage in a "pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age," MCL 777.43(1)(a); he did not engage in a "pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang," MCL 777.43(1)(b); he did not engage in a "pattern of felonious criminal activity involving 3 or more crimes against a person," MCL 777.43(1)(c); he did not engage in a "pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403," MCL 777.43(1)(d); he did not engage in a "pattern of felonious criminal activity involving a combination of 3 or more violations of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA

8

points are assessed for OV 13, as they should be in this case, the variable is "score[d]" as is required by MCL 777.22(5). That is, assessing zero points for OV 13 is in no way inconsistent with the command in MCL 777.22(5) to score OV 13 "[f]or all crimes against public safety . . . ."

Further, the partial dissent's contention that, under the majority's analysis, the score for OV 13 can never be anything but zero points when the sentencing offense is a "crime against public safety" is simply wrong. Suppose, for example, that a defendant repeatedly assisted prisoners in escaping from prison in violation of MCL 750.183 so that these prisoners would join defendant's gang. Although this offense is a "crime against public safety," MCL 777.16j, 25 points could be assessed for OV 13 under MCL 777.43(1)(b) because the sentencing offense was "part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang . . . ." There is nothing "illogical" about the Legislature's directive to score OV 13 "[f]or all crimes against public safety," MCL 777.22(5), but not to assess

---

368, MCL 333.7401 and 333.7403," MCL 777.43(1)(e); and he did not engage in a "pattern of felonious criminal activity involving 3 or more crimes against property," MCL 777.43(1)(f). Because defendant did not engage in any of the *preceding* "pattern[s] of felonious criminal activity," and because MCL 777.43(1) directs us to score OV 13 "by determining which of the [these provisions] apply and by assigning the number of points attributable to the one that has the highest number of points," we must assess zero points for OV 13 here. Assessing zero points is the only way to be "faithful to the legislative command that OV 13 must be *accurately* scored for *every* crime covered by the guidelines." *Post* at 8 (emphasis in the original). However, I do agree with the partial dissent that a "pattern of felonious criminal activity" that cannot be scored under OV 13 or any other offense variable may well constitute a "substantial and compelling" reason to justify an upward departure from the recommended minimum sentence range under the sentencing guidelines. *People v Babcock*, 469 Mich 247, 257-258 & n 12; 666 NW2d 231 (2003).

25 points for OV 13 under MCL 777.43(1)(c) unless the sentencing offense is a "crime against a person." *Post* at 7.

Similarly, the partial dissent is wrong in its assertion that, under the majority's analysis, a conspiracy could never be counted when scoring OV 13 because a conspiracy is a "crime against public safety," MCL 777.18, and thus the Legislature's directive in MCL 777.43(2)(f) not to count a conspiracy in certain circumstances, would be completely unnecessary. To the contrary, under the majority's analysis, a conspiracy could be counted when scoring OV 13 if, for example, a defendant repeatedly conspired to threaten to harm persons who withdrew from his gang. In that situation, the conspiracy could be considered "part of a pattern of felonious criminal activity directly related to . . . communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang[.]" MCL 777.43(1)(b). Once again, the Legislature's directive in MCL 777.43(2)(f) not to count conspiracy in certain circumstances is in no way rendered meaningless under the majority's analysis of OV 13, and once again there is nothing that the majority has "disregard[ed]." *Post* at 6.

For these reasons, and for the additional reasons articulated in the majority opinion, I concur in the majority's conclusion that zero points should have been assessed for OV 13. And because this scoring error altered his guidelines range, defendant is entitled to be resentenced. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006). That is, defendant is entitled to be sentenced in accordance with the sentencing guidelines, and the Legislature is entitled to have its sentencing guidelines taken seriously. In particular, the Legislature is entitled to define crimes as it sees fit, classify

10

and categorize crimes as it sees fit, and establish terms of punishment for crimes as it sees fit without being countermanded by this Court.

Stephen J. Markman
Michael F. Cavanagh
Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                                                   No. 140510

JOHNNY BONILLA-MACHADO,

       Defendant-Appellant.

_____

YOUNG, C.J. (*concurring in part and dissenting in part*).

I concur in that portion of the majority opinion holding that defendant was not denied his right to testify at his trial. Because the record indicates that defendant made the volitional choice to refrain from testifying, it cannot be said that defendant was *denied* the right to testify at his trial.

However, I dissent from that that portion of the majority opinion holding that the scoring of offense variable (OV) 13, MCL 777.43, which considers a "continuing pattern of criminal behavior," is limited to using a narrow subset of offense categories. Because the Legislature has unambiguously indicated that OV 13 is to be scored for crimes in *all* offense categories, the analysis proffered by the majority necessarily renders the explicit legislative command nugatory. I believe that OV 13 is properly scored under the relevant provisions if the charged crime is part of a pattern of criminal activity "involving" crimes

against a person or property, regardless of the offense category to which the crime is assigned.[1]

## ANALYSIS

This Court reviews questions of statutory interpretation de novo.[2] In order to effectuate the intent of the Legislature, we must interpret every word, phrase, and clause in a statute so as to avoid rendering any portion of the statute nugatory or surplusage.[3]

Defendant was convicted of two counts of assaulting a prison employee[4] as a second-offense habitual offender.[5] At issue in this case is the proper scoring of OV 13, which provides in full as follows:

> (1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age ..................................................................... 50 points

---

[1] I decline to address the third issue considered by the majority opinion, as the issue is undisputedly moot.

[2] *Jenkins v Patel*, 471 Mich 158, 162; 684 NW2d 346 (2004).

[3] *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006).

[4] MCL 750.197c.

[5] MCL 769.10. Defendant's prior convictions include assaulting a prison employee just five weeks before the instant offenses, as well as convictions for attempted carjacking and unarmed robbery.

(b) The offense was part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang ............................................................................... 25 points

(c) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person .................................. 25 points

(d) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403 ............................................................................ 10 points

(e) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more violations of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403 ......................................................... 10 points

(f) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against property .................................... 5 points

(g) No pattern of felonious criminal activity existed ............ 0 points

(2) All of the following apply to scoring offense variable 13:

(a) For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.

(b) The presence or absence of multiple offenders, the age of the offenders, or the degree of sophistication of the organized criminal group is not as important as the fact of the group's existence, which may be reasonably inferred from the facts surrounding the sentencing offense.

(c) Except for offenses related to membership in an organized criminal group or that are gang-related, do not score conduct scored in offense variable 11 or 12.

(d) Score 50 points only if the sentencing offense is first degree criminal sexual conduct.

(e) Do not count more than 1 controlled substance offense arising out of the criminal episode for which the person is being sentenced.

3

(f) Do not count more than 1 crime involving the same 1 [sic] controlled substance. For example, do not count conspiracy and a substantive offense involving the same amount of controlled substances or possession and delivery of the same amount of controlled substances.[6]

Additionally, all felonies covered by the sentencing guidelines have been placed into one of six offense categories: crimes against a person, crimes against property, crimes involving a controlled substance, crimes against public order, crimes against public trust, and crimes against public safety.[7] The sole purpose served by the offense categories in our legislative sentencing scheme is determining which of the 20 offense variables are to be scored, as not every felony requires the scoring of every offense variable.[8]

The Court of Appeals held that 25 points rather than 10 points were properly assessed for OV 13 because, although assault against a prison employee was *classified* as a crime against public safety, the offense was "*also* a crime against a person" because "a prison guard is a person."[9] The Court of Appeals reasoned that the phrases "crimes against a person" and "crimes against property" in OV 13 did not limit scoring to those

---

[6] MCL 777.43.

[7] MCL 777.11 through 777.19; see also MCL 777.5 and MCL 777.22.

[8] MCL 777.22. Citing OV 12 and OV 13, the majority concludes that the offense categories also determine how those OVs should be scored. However, the issue to be determined in this case is *whether* the phrases "crimes against a person" and "crimes against property" used in OV 13 refer to the offense categories listed at MCL 777.5. Simply declaring as a fait accompli the issue to be determined is a poor substitute for reasoned legal analysis.

[9] *People v Bonilla-Machado*, unpublished opinion per curiam of the Court of Appeals, issued December 15, 2009 (Docket No. 287605), p 4.

4

two statutory offense classifications; rather, points were properly assessed if the sentencing offense was part of a pattern involving crimes "against a person" or "property" without regard to the designated offense category.

The majority disagrees, concluding that the "offense categories in MCL 777.5 are statutorily defined phrases"[10] to be applied "in a uniform manner"[11] throughout chapter XVII of the Code of Criminal Procedure.[12] However, MCL 777.5 does not define or give *any meaning whatsoever* to the various offense categories.[13] Rather, MCL 777.5,

---

[10] *Ante* at 13.

[11] *Ante* at 13-14.

[12] Acknowledging, as it must, that MCL 777.5 merely "provides abbreviated designations for the offense categories," the majority then concludes that "the fully named offense categories are used uniformly and consistently throughout the sentencing guidelines." *Ante* at 9. However, the plain language limits the applicability of MCL 777.5 to "part 2" of chapter XVII, and contains no language indicating its universal applicability "throughout the sentencing guidelines."

[13] MCL 777.5 states:

> The offense categories are designated in part 2 of this chapter as follows:
>
> (a) Crimes against a person are designated "person".
>
> (b) Crimes against property are designated "property".
>
> (c) Crimes involving a controlled substance are designated "CS".
>
> (d) Crimes against public order are designated "pub ord".
>
> (e) Crimes against public trust are designated "pub trst".
>
> (f) Crimes against public safety are designated "pub saf".

5

contained in part 1 of the sentencing guidelines, merely designates *abbreviations* for the offense categories to be used in part 2 of the sentencing guidelines.[14] Assuming, arguendo, that one could describe the listed abbreviations as "definitions," it is difficult to see how these definitions would have any applicability outside part 2—the one and only part of the sentencing guidelines specifically "designated" in MCL 777.5. Certainly, there is no statutory indication that the Legislature intended that these so-called "definitions" be carried over into part 4 of the sentencing guidelines, the part dedicated to the offense variables.[15]

The majority opinion further states that "[i]f the Legislature had intended to allow courts to consider crimes within *all* the offense categories when scoring OV 13, it could have expressly included additional offense categories or simply stated that all crimes could be considered to establish a continuing pattern of criminal behavior."[16] This reasoning, however, disregards unequivocal proof that the Legislature "intended to allow

---

[14] Part 2 of the sentencing guidelines, entitled "Included Felonies," can be found at MCL 777.11 through 777.19. This part lists each felony by MCL number, provides a short description of the offense, and assigns each felony an offense category and offense class. The offense class determines the proper sentencing grid to use. See MCL 777.61 through 777.69.

[15] For similar reasons, the majority is incorrect in stating that "[t]he Court of Appeals' opinion would permit courts to ignore the explicit statutory offense categories . . . ." *Ante* at 14. Regardless of whether the categorizations apply in part 4, the offense categories are appropriately applied in part 2, as explicitly directed by statute. Thus, the offense categories retain meaning under the Court of Appeals' interpretation, and not applying the categorizations in part 4 simply does *not* mean that the offense categories are being "ignore[d]."

[16] *Ante* at 15.

6

courts to consider crimes within all the offense categories when scoring OV 13." Significantly, MCL 777.22 *specifically commands* that OV 13 be scored for *each and every* offense category, including those offenses categorized as crimes involving a controlled substance, crimes against public order, crimes against public trust, and crimes against public safety.[17]

It is illogical to conclude that the Legislature did not *intend* the very act that it explicitly *requires*. Under the majority's analysis, four of the six offense categories[18] cannot be used to assess points under OV 13 because the offense variable is limited to "specific offense categories."[19] Interpreting MCL 777.43 in a way that excludes these offense categories from scoring consideration renders the specific legislative directive to

---

[17] MCL 777.22 states, in relevant part:

(1) For all crimes against a person, score offense variables 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 19, and 20. . . .

(2) For all crimes against property, score offense variables 1, 2, 3, 4, 9, 10, 12, 13, 14, 16, 19, and 20.

(3) For all crimes involving a controlled substance, score offense variables 1, 2, 3, 12, 13, 14, 15, 19, and 20.

(4) For all crimes against public order and all crimes against public trust, score offense variables 1, 3, 4, 9, 10, 12, 13, 14, 16, 19, and 20.

(5) For all crimes against public safety, score offense variables 1, 3, 4, 9, 10, 12, 13, 14, 16, 19, and 20.

[18] The only apparent exceptions would be the specifically enumerated crimes contained in MCL 777.43(1)(d) and (e) that are classified as "crimes involving a controlled substance" and those crimes that may be considered gang-related under MCL 777.43(1)(b).

[19] *Ante* at 16.

score OV 13 for *every* offense category a nullity.[20] The majority believes that its analysis is faithful to the intent of the Legislature because the score for "an offense variable can—and sometimes, as here, will—be zero points."[21] However, assessing zero points is appropriate only when "[*n*]*o* pattern of felonious criminal activity existed."[22] In this case, as no one disputes, defendant clearly engaged in a "pattern of felonious criminal activity." The majority's argument that OV 13 should not be scored *at all* given that the Legislature allows zero points to be assessed when appropriate does not withstand scrutiny and is not faithful to the legislative command that OV 13 must be *accurately* scored for *every* crime covered by the guidelines. The majority has, in effect, eliminated four of the six offense categories from inclusion as part of a pattern of felonious criminal activity and has thus accomplished a judicial rewriting of the statute.

I further note that nothing in the language of OV 13 explicitly refers to offense *categories*. If the Legislature had intended to limit the scoring of OV 13 to those crimes *classified* as being "crimes against a person" or "crimes against property," it would have made some reference to crime classifications or offense categories. It might have stated, for example, that a court should assess 5 points when the offense was part of a pattern of

---

[20] I note, however, that if, as the majority opinion now requires, defendant's "continuing pattern of criminal behavior" could not be scored under OV 13, it would provide a substantial and compelling reason for an upward sentencing departure because it is both "objective and verifiable" and not already considered in determining the guidelines recommended minimum sentence range. *People v Babcock*, 469 Mich 247, 257-258 & n 12; 666 NW2d 231 (2003).

[21] *Ante* at 15.

[22] MCL 777.43(1)(g) (emphasis added).

8

felonious criminal activity involving three or more crimes *classified as* a crime against property or in the offense category of crimes against a person.

Lastly, the example contained in MCL 777.43(2)(f) provides further indication that the Legislature did not intend that the scoring of OV 13 be restricted to using a narrow subset of offense categories as the majority contends. The statutory provision provides:

> Do not count more than 1 crime involving the same 1 [sic] controlled substance. For example, *do not count conspiracy* and a substantive offense involving the same amount of controlled substances or possession and delivery of the same amount of controlled substances.[23]

This subdivision prohibits scoring a drug conspiracy offense along with a substantive drug offense, but does not *in any other way* limit the scoring of OV 13 for the crime of conspiracy. Conspiracy is not classified as a crime against a person, nor is it classified as a crime against property. Rather, conspiracy[24] is classified as a crime against public safety.[25] If the Legislature had intended that crimes against public safety could not be used to score OV 13, then there would have been no need for the Legislature to describe a narrow exception under which a *specific* crime against public safety (conspiracy) could not be counted.

In order to give meaning to the language contained in MCL 777.43 as well as the language contained in MCL 777.22, I would hold that the relevant portions of OV 13

---

[23] MCL 777.43(2)(f) (emphasis added).

[24] MCL 750.157a(a).

[25] MCL 777.18.

9

may be scored when the sentencing offense is part of a pattern of criminal activity "involving"[26] crimes against a person or property, regardless of the offense categories of those crimes. Certainly, defendant's sentencing offenses involved or implicated "persons"—the two prison guards who were the victims of defendant's felonious behavior. Therefore, I believe the Court of Appeals correctly determined that OV 13 was properly scored at 25 points.

Because the majority's conclusion that OV 13 is limited to "specific offense categories" renders the explicit legislative command contained in MCL 777.22 nugatory, I dissent and would deny defendant's application for leave to appeal.

> Robert P. Young, Jr.
> Brian K. Zahra

---

[26] To "involve" means "to implicate, as in guilt or crime, or in any matter or affair." *Random House Webster's College Dictionary* (2000), p 698, def 7.