Young, J.
At issue in this case is whether defendant Michigan High School Athletic Association, Inc. (MH-SAA), a private, nonprofit entity that organizes and supervises interscholastic athletic events for its voluntary members, is a “public body” as that term is defined at MCL 15.232(d) of the Freedom of Information Act (FOIA), MCL 15.231 et seq. Plaintiffs contend that the MHSAA is a public body within the meaning of the FOIA because (1) it is “primarily funded by or through state or local authority,” MCL 15.232(d)(iv); (2) it is “created by state or local authority,” MCL 15.232(d)(iv); and (3) it is an “agency” of a school district, MCL 15.232(d)(iii).
The trial court held that the MHSAA was “primarily funded by or through state or local authority” and that it was therefore subject to the FOIA as a public body under § 232(d)(iv). The Court of Appeals reversed, concluding that neither § 232(d) (iv) nor § 232(d) (iii) applied to the MHSAA. Because we agree that the MHSAA does not qualify as a public body under § 232(d) (iii) or (iv), we affirm.
I. FACTS AND PROCEDURAL HISTORY
A. THE MHSAA
The MHSAA was originally founded in 1924 to exercise control over the interscholastic athletic activities of all *220 public schools in the state through agreement with the State Superintendent of Public Instruction. The MHSAA was housed within the Michigan Department of Education, and its handbook, rules, and regulations were part of the Administrative Code of the state of Michigan.
In 1972, the MHSAA became an incorporated, nonprofit membership organization. In that year, the Legislature transferred control of interscholastic athletics from the State Board of Education to the individual school boards, but retained the status of the MHSAA as the official association of the state. See MCL 340.379 (repealed by 1976 PA 451, § 1851); MCL 380.1289 (before its amendment by 1995 PA 289, § 1); MCL 380.1521 (repealed by 1995 PA 289, § 2).[1] In 1995, the Legislature adopted the Revised School Code, MCL 380.1 et seq., which repealed and amended several statutes. Through the Revised School Code, the MHSAA was removed as the “official” organization overseeing interscholastic sports. Under MCL 380.11a(4), a school district’s membership in any athletic organization remains entirely voluntary (school districts “may . . . join organizations as part of performing the functions of the school district” [emphasis supplied]).
The MHSAA is governed by a representative council made up of nineteen voting members, including fourteen members elected by member schools, four mem *221 bers appointed by the council, and one representative of the state superintendent of education. The council has control of interscholastic athletic policies, and a five-member executive committee makes rules necessary for the control and government of interschool activities.
The MHSAA regulates interscholastic athletic competition between member schools and sets standards for school membership and eligibility of students to participate in interscholastic athletics. Apparently, the vast majority of high schools in Michigan are members of the MHSAA. Approximately seven hundred Michigan high schools are members of the MHSAA and more than eighty percent of those schools are public. Member schools pay no membership dues and no tournament entry fees. The only funds collected from schools are (1) payments for the cost of publications provided to a school in excess of the quantity already provided to members and (2) meeting expenses (for example, the cost of lunch).
The majority — approximately ninety percent — of the MHSAA’s revenues are gate receipts at post-season athletic tournaments for football and basketball. The gate receipt revenues come directly from the sale of the MHSAA’s tickets to members of the public who attend MHSAA-sponsored events. In some cases, the MHSAA itself does not sell the tickets, but member schools remit to the MHSAA gate receipts collected from tickets sold by the schools for the MHSAA-sponsored events.
Because no revenues are derived either during the regular season or from most of the tournaments sponsored by the MHSAA, the positive cash flow from the football and basketball tournaments is used to fund these other activities. Services provided by the MHSAA to its members include the provision of medical insurance for student-athletes; dissemination of play rule books; organization of meetings for coaches and officials; pro *222 vision of several school and officials publications; provision of trophies and medals; training; direction and management of tournaments; and the services of the MHSAA staff.
B. PLAINTIFFS’ FOIA PROCEEDINGS
Plaintiffs are the parents of a high school student who was prohibited from participating in a ski meet sponsored by the MHSAA because he had previously participated in an unsanctioned event in violation of MHSAA rules. Plaintiffs filed a request under the FOIA seeking information related to that decision. The MHSAA refused to comply with the request, asserting that it was not a public body and was therefore not subject to the FOIA.
The trial court granted summary disposition to plaintiffs, holding that the MHSAA is “primarily funded by or through state or local authority” within the meaning of § 232(d) (iv) because the vast majority of its funding comes from gate receipts at the athletic events it sponsors. The trial court held that the gate receipts that comprised the majority of the MHSAA’s revenue were received “through” the schools because the MHSAA essentially “ ‘enjoys the schools’ moneymaking capacity as its own,’ ” quoting Brentwood Academy v Tennessee Secondary School Athletic Ass’n, 531 US 288; 121 S Ct 924; 148 L Ed 2d 807 (2001).
The Court of Appeals reversed, holding that the MHSAA was not a public body under either § 232(d) (iv) or § 232(d)(iii). 255 Mich App 567, 581-582, 583; 662 NW2d 413 (2003).
The majority first addressed plaintiffs’ argument that the MHSAA was “created by state or local authority” under § 232(d)(iv). The majority held that, although it *223 was originally created under such authority, the modern incarnation of the MHSAA was a unique, private entity that had ceased being the official athletic association for the state. This unique entity was not “created” by state or local authority.
The majority further rejected the trial court’s conclusion that the MHSAA is primarily funded by or through state or local authority. The panel noted that the state provides no financial resources to fund the MHSAA’s activities, and that the MHSAA actually paid fees for the use of host facilities. Member schools pay no fees or dues to the MHSAA. The MHSAA is a private, nonprofit organization that hires and trains its own officials and pays its own employees; furthermore, its revenues are derived from the sale of its own tickets for its own events. The majority further noted that schools are not forced to join the MHSAA and that member schools voluntarily chose to engage the MHSAA’s services. The individual schools have authority over their own interscholastic events and have no independent authority over the MHSAA.
Finally, the majority rejected plaintiffs’ argument that the MHSAA is an “agent” of the state and therefore subject to the FOIA under § 232(d)(iii). The majority looked to Black’s Law Dictionary (7th ed), where “agency” was defined as “[a] fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by words or actions.” The majority further noted that, pursuant to St Clair Intermediate School Dist v Intermediate Ed Ass’n, 458 Mich 540, 558 n 18; 581 NW2d 707 (1998), “an agency relationship arises only where the principal ‘has the right to control the conduct of the agent with respect to matters entrusted to him.’ ” *224 (citations omitted). The majority held that the MHSAA was governed by its board of directors, not the individual schools who voluntarily became its members. No one school or district could control the MHSAA, because it was controlled by its own board. Therefore, the majority held, the MHSAA was not an “agent” of its member schools.
Judge JANSEN dissented, opining that the public policy behind the FOIA favored disclosure and that the MHSAA was primarily funded by or through state or local authority because its gate receipts came to it only through or by means of the schools’ authority to regulate sporting events. Judge JANSEN opined that the majority’s holding was contrary to two cases, State Defender Union Employees v Legal Aid & Defender Ass’n of Detroit, 230 Mich App 426, 432; 584 NW2d 359 (1998), and Kubick v Child & Family Services, 171 Mich App 304; 429 NW2d 881 (1988), in which the Court of Appeals had held, respectively, that (1) “funded” for purposes of the FOIA definition of “public body” meant the receipt of a governmental grant or subsidy and (2) funding that amounted to less than half the total funding of a corporation did not amount to primary funding. Judge JANSEN opined that the gate receipts remitted to the MHSAA were the functional equivalent of a grant or subsidy and that virtually the entire budget of the MHSAA came from gate receipts. Finally, Judge JANSEN opined that the majority’s holding was contrary to the Supreme Court’s holding in Brentwood that the Tennessee Secondary School Athletic Association (TSSAA), an organization that is allegedly analogous to the MHSAA, was a state actor for Fourteenth Amendment purposes.
We granted plaintiffs’ application for leave to appeal. 469 Mich 952 (2003).
*225 II. STANDARD OF REVIEW
This case involves questions of statutory interpretation, which are reviewed de novo. Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 62; 642 NW2d 663 (2002). We review the trial court’s grant of summary disposition de novo. Id.
III. ANALYSIS
A. INTRODUCTION
The FOIA generally requires disclosure, upon written request, of public records in the possession of a “public body.” MCL 15.233(1). “Public body” is defined in MCL 15.232(d) as follows:
(i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.
(ii) An agency, hoard, commission, or council in the legislative branch of the state government.
(iii) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.
(iv) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority.
(v) The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body. [Emphasis added.]
B. THE MHSAA IS NOT PRIMARILY FUNDED BY OR THROUGH STATE OR LOCAL AUTHORITY
We agree with and adopt the reasoning of the Court of Appeals majority in holding that the MHSAA is not a *226 “public body” as that term is defined by MCL 15.232(d)(iv).
In granting summary disposition for plaintiffs, the trial court held that the MHSAA was “primarily funded through state or local authority” and thus qualified as a public body under § 232(d)(iv). The court, noting that it was required to give effect to each word and provision of the statute, held that the use of the terms “by” and “through” indicated that funds received both directly and indirectly would be considered in determining whether an entity was a public body under § 232(d)(iv). The court concluded that, although the MHSAA did not receive money directly from the schools, it “ ‘enjoy[ed] the schools’ moneymaking capacity as its own,’ ” quoting Brentwood, supra, and was therefore publicly funded.
Although we agree that the statutory terms “by” and “through” must each be accorded their unique meanings, and that this terminology suggests that even indirect public funding might satisfy the requirements of § 232(d)(iv), we find persuasive the analysis of the Court of Appeals majority:
We read “by or through” to distinguish between the different meanings of the word “authority,” that is, funding “by” a governmental authority (an entity) and funding “through” governmental decision-making authority (the power to regulate). Under our reasoning, the former refers to an entity that directly distributes its financial resources to the disputed organization, while the latter refers to the disputed organization indirectly receiving funds through some action or decision of the governmental body. [255 Mich App 579-580 (emphasis in original).]
The MHSAA is funded neither “by” nor “through” a governmental authority. As our Court of Appeals held in State Defender Union Employees, “funded,” as used in *227 § 232(d)(iv), means “the receipt of a governmental grant or subsidy.” The MHSAA is not the recipient of any governmental grant or subsidy. The MHSAA’s member schools do not distribute their financial resources to the MHSAA; nor do the schools indirectly fund the MHSAA through allocations of public monies. Rather, the MHSAA — an independent, nonprofit corporation — is primarily funded by the sale of its own tickets to private individuals who have voluntarily paid a fee to observe an MHSAA-sponsored athletic event. Member schools pay no dues or fees to the MHSAA, the MHSAA pays fees for the use of host facilities, and it receives no funds from host concessions; thus, the state provides absolutely no public resources to the MHSAA.[2]
*228 Nor, contrary to the holding of the trial court and the opinion of our dissenting colleague, does the MHSAA “enjoy[] the schools’ moneymaking capacity as its own.”[3] The MHSAA organizes postseason tournaments, *229 rents the game venues and sells tickets for those games. Without the MHSAA’s leadership and organizational effort, no revenue from tournament games would be generated for any entity, including MHSAA member schools. In short, MHSAA creates its own “market" and revenue therefrom that would otherwise not exist without its effort. Finally, it is worth noting that member schools have voluntarily relinquished to the MHSAA any interest they may have had in ticket sales for athletic tournaments sponsored by the MHSAA, and the MHSAA, in turn, is fully responsible for the organization and administration of the tournament.
In this vein, we agree with the reasoning of the Court of Appeals in State Defender Union, supra at 432-433, that
an otherwise private organization is not “funded by or through state or local authority” merely because public monies paid in exchange for goods provided or services rendered comprise a certain percentage of the organization’s revenue. Earned fees are simply not a grant, subsidy, or funding in any reasonable, common-sense construction of those synonymous words. Rather, it is clear that, in the FOIA, funded, means something other than an exchange of services or goods for money, even if the source of money is a governmental entity. [Emphasis in original.]
The MHSAA, as noted, provides numerous services for its member schools, such as medical insurance for students, publications, training, and many other benefits that schools would not otherwise be in a position to provide. Here, even assuming that the private ticket-sale revenue at issue somehow passes “through” a *230 governmental entity, these funds are received by the MHSAA in exchange for the multitude of services it performs for its members, most significantly the administration of the tournaments for which the tickets are sold. The MHSAA is therefore not “funded” by or through a governmental entity within the meaning of § 232(d)(iv).
C. THE MHSAA IS NOT CREATED BY STATE OR LOCAL AUTHORITY
Plaintiffs contend that the MHSAA is a “creature” of the schools and that it is therefore “created by state or local authority” within the meaning of § 232(d)(iv). In support of this rather tenuous argument, plaintiffs cite Kirby v MHSAA, 459 Mich 23, 39 n 17; 585 NW2d 290 (1998), in which this Court stated that the MHSAA “is a creature of its members, with no independent authority over schools or students. The schools can and should exercise appropriate oversight of the MHSAA.” Plaintiffs additionally, and inconsistently, argue that the MHSAA is a “de facto public body” because it has retained much of the same authority that was originally bestowed upon it in 1924: the authority to exercise control over the interscholastic athletic activities of all high schools of the state. Plaintiffs stress that high schools have no practical choice but to join the MHSAA if they want to participate in interscholastic sports.
We agree with the Court of Appeals majority that the MHSAA is no longer the same entity that was arguably “created” by state authority in 1924. Rather, the modern incarnation of the MHSAA is a wholly different organization from the entity that was at one time legislatively designated as the official organization for the regulation of interscholastic sports in Michigan and that was housed within the Michigan Department of Education. The MHSAA is now a private corporation that is wholly self-regulated. Membership is, by statute, *231 completely voluntary. See MCL 380.11a(4) (providing that “[a]... school district may join organizations as part of performing the functions of the school district”). In short, the MHSAA in its current form is not “created by state or local authority.”
We further note that our comment in Kirby — that the MHSAA “is a creature of its members, with no independent authority over schools or students” — merely lends further credence to our conclusion that the MHSAA is not a public body. Michigan schools are in no way obligated to join the MHSAA, and they remain free to join other athletic organizations in lieu of, or in addition to, the MHSAA. Member schools do not relinquish authority or decision-making capacity to the MHSAA, nor does the MHSAA have any independent authority over its members.[4] There is simply no basis for concluding that this private corporation is “created” by any governmental authority.[5]
D. THE MHSAA IS NOT AN AGENCY OF THE SCHOOLS
Finally, plaintiffs contend that the MHSAA acts as an “agent” for its member schools and that it is therefore a public body as defined by § 232(d)(iii):
*232 A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof. [Emphasis added.]
The Court of Appeals majority and the parties appear to have assumed that § 232(d) (iii) includes “agents” of enumerated governmental entities in the definition of “public body.” We disagree and believe that there is a fundamental difference between the terms “agent” and “agency” as the latter term is used in the statute.
As we have noted on many occasions, a statutory term cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme.
“Contextual understanding of statutes is generally grounded in the doctrine of noscitur a sociis: ‘it is known from its associates,’ see Black’s Law Dictionary (6th ed), p 1060. This doctrine stands for the principle [of interpretation] that a word or phrase is given meaning by its context or setting.” .. . Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. [Sweatt v Dep’t of Corrections, 468 Mich 172, 179-180; 661 NW2d 201 (2003) (citations omitted).]
Although the noun “agency” may be used to describe a business or legal relationship between parties, it is wholly evident from the context of § 232(d) (iii) that this is not the sense in which that term is used. Section 232(d) (iii) designates several distinct governmental units as public bodies, and proceeds to include in this definition any “agency” of such a governmental unit. In this specific context, the word “agency” clearly refers to a unit or division of government and not to the relationship between a principal and an agent. Had the Legislature intended any “agent” of the enumerated governmental entities to qualify under § 232(d)(iii), it would *233 have used that term rather than “agency Thus, we reject plaintiffs’ argument that the MHSAA acts as an “agent” of its member schools and that it thus qualifies as an “agency” under § 232(d)(iii).[6]
[7]
IV CONCLUSION
The MHSAA, a private, nonprofit organization having a wholly voluntary membership of private and public schools, is not a “public body” within the meaning of the FOIA and is therefore not subject to the FOIA’s provisions. Accordingly, we affirm the decision of the Court of Appeals.
Corrigan, C.J., and Cavanagh, Taylor, and Markman, JJ., concurred with YOUNG, J.

 MCL 380.1289(1) provided, until 1995, that “[a] board of a school district... may join an organization, association, or league which has as its object the promotion and regulation of sport and athletic... contests ....” Section 1289(2) further provided:
An association established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools shall be the official association of the state. The association is responsible for the adoption and enforcement of regulations relative to eligibility of pupils in schools for participation in interscholastic athletic events, contests, or tournaments. [Emphasis supplied.]

 The dissent has extracted broad dictionary definitions of the words “by” and “through” to suggest that the receipt of any monies “by virtue of’ an entity’s relationship with a state or local governmental body is sufficient to render that entity “funded by or through state or local authority.” The dissent’s analysis, aside from conflating the distinct meanings of the words “by” and “through,” completely disregards the meaning of the statutory term “funded." As we have explained, the word “funded” does not connote the simple receipt of payment in return for services or materials provided; it connotes receipt of an allocation of resources or a subsidization. See State Defender Union Employees, supra at 432; Random House Webster’s College Dictionary (1997). Yet the dissent does not even require that an entity doing business with the government collect fees for goods or services in order to qualify as a public body; the relationship alone seems critical. Such an extreme position is neither warranted by the language of the statute nor fathomable within the bounds of common sense. Taken to its logical conclusion, the dissent’s version of the statute would place within the ambit of § 232(d) (iv) any contractor or other business that obtains a majority of its income from sales made or services rendered to governmental bodies. See Brentwood, supra at 311 (Thomas, J., dissenting) (“the [Tennessee Secondary School Athletic Association’s] ‘fiscal relationship with the State is not different from that of many contractors performing services for the government.’”). (Citation deleted.) Consider, for example, the nonprofit College Board, which administers the SAT to hundreds of Michigan students in the classrooms of participating public schools each year. Public school students pay the examination fee directly to the *228 College Board, but under the dissent’s rationale the Board would be a “public body” subject to foia disclosure requirements simply because it derives income “by virtue” of the fact that the public schools have facilitated an opportunity for the Board to administer this test in the schools.

 Our holding today is limited to the specific question whether the MHSAA is a “public body” within the meaning of the FOIA. We express no opinion concerning the relevance of Brentwood, supra, insofar as it may apply to the due process implications of the actions of the mhsaa. We have before us no constitutional question and decline to address whether the mhsaa is a “state actor” for purposes of 42 USC 1983 and the Fourteenth Amendment, as it would be inappropriate to import the concept of and analysis relevant to state action into our statutory analysis. Rather, we are constrained to apply the plain language of the FOIA’s definitional provisions in determining whether the mhsaa is subject to the requirements of the foia.
While our dissenting colleague acknowledges this fact, see post at 239-240, she nevertheless appears to contend that the definition of “state actor” under federal law is “pertinent” in defining “public body” under the FOIA. This is particularly true of Justice Weaver’s focus on “entwinement” as a relevant inquiry for defining “public body.”
There is a rather straightforward answer to the dissent’s utilization of “state actor” analysis: it is possible for mhsaa to be a state actor under § 1983 and the Fourteenth Amendment without being a “public body” under the FOIA if the Legislature has defined “public body” in a manner inconsistent with Fourteenth Amendment jurisprudence in the FOIA. The dissent apparently cannot accept the possibility that the Legislature has the discretion to define “public body” in any way it chooses; yet she offers no support for the proposition that the Legislature was bound by or had in mind the definition of “state actor” under federal law when it drafted the FOIA. And, of course, there is no support for that proposition. The Legislature was free to define “public body” in the FOIA as narrowly or broadly as it wished. We give meaning to the Legislature’s terms while the dissent is in search of alternate meanings.
The dissent not only conflates the meaning of “state actor” under § 1983 and the Fourteenth Amendment with the definition of a “public body” under the FOIA, but she goes on to extract from Brentwood the *229 concept that the Tennessee Secondary School Athletic Association (tssaa) (and, by analogy, the mhsaa) “enjoys the schools’ moneymaking capacity as its own.” As stated supra in note 2, the mhsaa is not “funded” by participating school districts but provides services in the activities it conducts and for which it collects gate receipts.

 Justice Weaver’s assertion that the school districts “have delegated the authority to the mhsaa to make policy decisions,” post at 246-247, is flatly incorrect. As noted above, the school districts have voluntarily assumed the athletic eligibility conditions set by the mhsaa. Again, -while “entwinement” may be a relevant constitutional inquiry for defining who might be a state actor, it has no relevance to our obligation to give meaning to “public body” as the Legislature has defined it.

 The dissent’s analysis suffers for placing undue emphasis on the historical connection between what is now a private, not-for-profit corporation and its previous incarnation as a state-controlled entity. See post at 237-238. This historical connection to the state, however interesting, is irrelevant to the question currently before the Court. At issue is not whether the 1924 incarnation of the mhsaa is a “public body,” but whether today’s private corporation composed of voluntary members is a “public body” under the foia. When one engages in this inquiry without conflating the present private corporation with its public ancestor, it is manifest that the mhsaa is not a “public body” under the foia.

 The Department of Labor and Economic Growth, for example, is a governmental “agency,” but a real estate office hired to sell governmental property is not a governmental “agency.” Indeed, it would defy logic (as well as the plain language of § 232[d][iii]) to conclude that the Legislature intended that any person or entity qualifying as an “agent” of one of the enumerated governmental bodies would be considered a “public body” for purposes of the FOIA.

 Moreover, even if we were to conclude that the term “agency” as used in § 232(d)(iii) includes agents of the enumerated governmental entities, the mhsaa is an independent body that is in no way the “agent” of its members. As noted by the Court of Appeals majority in this case, “[i]t is a fundamental principle of hornbook agency law that an agency relationship arises only where the principal ‘has the right to control the conduct of the agent with respect to matters entrusted to him.’ ” St Clair Intermediate School Dist, supra at 557-558 (citations omitted). The MHSAA is governed by its own internal board. The individual school members have no authority over the actions of the MHSAA. Moreover, by joining the mhsaa, member schools are required to relinquish to the mhsaa complete authority over the rules and officiating of MHSAA-sponsored athletics.