McCormack, C.J. (concurring).
*591 The plaintiffs[1] applied for Medicaid to help defray the costs of nursing-home services. That's what Medicaid is for, but eligibility for its financial assistance is means-tested. To satisfy Medicaid's income and resource limits while preserving their assets, the plaintiffs each formed and funded an irrevocable "solely for the benefit of" (SBO) trust. The critical feature of these SBO trusts is that during each plaintiff's spouse's lifetime, distributions from the trusts could be made only to that spouse. I agree with the majority that property held in these SBO trusts is not countable toward Medicaid's resource limit because "the individual" in 42 U.S.C. 1396p(d)(3)(B) refers to the Medicaid applicant.
But I also believe that the plaintiffs' transfer of assets into the trusts triggers Medicaid's divestment rules.
**271 This issue has not been presented here, for understandable procedural reasons. I believe such a discussion is necessary, however, as a caution. If I am correct, then the plaintiffs' overall planning strategy would be undermined: although they would be able to satisfy Medicaid's threshold resource test, the plaintiffs would be disqualified from receiving Medicaid benefits for a time period calculated by reference to the value of the transferred assets. And because their strategy involves irrevocable trusts, there is no way to unwind the transfer. In short, the majority opinion should not be interpreted as permitting a married Medicaid applicant to shelter and preserve any amount of wealth without restriction, and then immediately receive financial assistance as if she did not have it.
I. MEDICAID BACKGROUND
The federal Medicaid Assistance Program (Medicaid), enacted as Title XIX of the Social Security Act, 42 U.S.C. 1396 et seq . (the Medicaid Act or the Act), is a program through which the federal government shares, along with participating states, the cost of providing financial assistance for medical services to "families with dependent children and [to] aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services ...." 42 U.S.C. 1396-1. State participation in the program is optional. States that do participate, however, must comply with federal law, including those provisions set forth in 42 U.S.C. 1396p regarding "liens, adjustments and recoveries of medical assistance correctly paid[,] transfers of assets, and treatment of certain trusts[.]" 42 U.S.C. 1396a(a)(18). In Michigan, the program is administered by the Department of Health **272 and Human Services (the Department), of which defendant is the director. MCL 400.105 ; see note 5 of the majority opinion.
To be eligible for Medicaid financial assistance for nursing-home services, each plaintiff's countable assets[2] could not exceed $ 2,000. See Part III(B)(1) of the majority opinion. The plaintiffs established these SBO trusts to reduce their countable assets to satisfy this limit.
A. ELIGIBILITY FOR NURSING-HOME SERVICES
For married applicants such as the plaintiffs, the eligibility rules for nursing-home *592 services begin with the "spousal impoverishment" provisions of the Medicaid Act. See 42 U.S.C. 1396r-5. Enacted by Congress in 1988, these provisions "permit a spouse living at home (called the 'community spouse') to reserve certain income and assets to meet the minimum monthly maintenance needs he or she will have when the other spouse (the 'institutionalized spouse'[3] ) is institutionalized, **273 usually in a nursing home, and becomes eligible for Medicaid." Wis. Dep't of Health & Family Servs. v. Blumer , 534 U.S. 473, 478, 122 S.Ct. 962, 151 L.Ed. 2d 935 (2002).
Congress achieved this in two ways. First is the treatment of income. For any month in which the institutionalized spouse receives nursing-home services, the Medicaid Act provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. 1396r-5(b)(1). "The community spouse's income is thus preserved for that spouse and does not affect the determination whether the institutionalized spouse qualifies for Medicaid. In general, such income is also disregarded in calculating the amount Medicaid will pay for the institutionalized spouse's care after eligibility is established." Blumer , 534 U.S. at 480-481, 122 S.Ct. 962 ; see 42 U.S.C. 1396r-5(b)(2). The spousal-impoverishment provisions also establish a "minimum monthly maintenance needs allowance." 42 U.S.C. 1396r-5(d)(3). Under 42 U.S.C. 1396r-5(d), if the community spouse's income is ever less than the allowance, the Act permits the institutionalized spouse to reallocate her income (up to the amount of the shortfall) to the community spouse, thereby resulting in Medicaid's paying a greater portion of the institutionalized spouse's nursing-home expenses. Blumer , 534 U.S. at 481-482, 122 S.Ct. 962.
The second way in which Congress protects a community spouse is through the Act's treatment of marital resources and the "community spouse resources allowance" (CSRA). As the Court explained in Blumer :
For purposes of establishing the institutionalized spouse's Medicaid eligibility, a portion of the couple's assets is reserved for the benefit of the community spouse. [ 42 U.S.C. 1396r-5(c)(2) ]. To determine that reserved amount (the **274 CSRA), the total of all of the couple's resources (whether owned jointly or separately) is calculated as of the time the institutionalized spouse's institutionalization commenced; half of that total is then allocated to each spouse (the "spousal share"). [ 42 U.S.C. 1396r-5(c)(1)(A) ]. The spousal share allocated to the community spouse qualifies as the CSRA, subject to [a statutory maximum and minimum]. The CSRA is considered unavailable to the institutionalized spouse in the eligibility determination, but all resources above the CSRA (excluding a small sum set aside as a personal allowance for the institutionalized spouse, currently $ 2,000 ...) must be spent before eligibility *593 can be achieved. [ 42 U.S.C. 1396r-5(c)(2) ]. [ Blumer , 534 U.S. at 482-483, 122 S.Ct. 962.]
Together, these rules "assur[e] that the community spouse has a sufficient-but not excessive-amount of income and resources available." Id . at 480, 122 S.Ct. 962 (citation and quotation marks omitted).
B. THE MEDICAID TRANSFER RULES
To prevent an institutionalized individual from simply giving away her assets to satisfy the Medicaid Act's eligibility criteria, Congress implemented a divestment penalty. This penalty is based on a look-back date-a set time before the individual's application for Medicaid benefits. 42 U.S.C. 1396p(c)(1)(B).[4] If an institutionalized individual or her spouse "disposes of assets for less than fair market value" at any point after the look-back date, 42 U.S.C. 1396p(c)(1)(A), she is disqualified from receiving financial assistance for nursing-home services for a length of time set by statutory formula, see 42 U.S.C. 1396p(c)(1)(D) and (E). That disqualification applies regardless of whether the individual is otherwise eligible for or even receiving Medicaid financial assistance. See id . The period of disqualification is **275 determined by dividing the total uncompensated value of the transferred assets by the average monthly cost of nursing-home services. 42 U.S.C. 1396p(c)(1)(E)(i).
In plainer terms, if either spouse disposes of assets for less than fair market value after the look-back date, the institutionalized spouse is disqualified from receiving financial assistance for a period that approximates the uncompensated value of the transferred assets.
But as with most rules, there are exceptions. There are certain "permissive" asset transfers, set forth in 42 U.S.C. 1396p(c)(2), that will not trigger a penalty:
(c) Taking into account certain transfers of assets
* * *
(2) An individual shall not be ineligible for medical assistance by reason of [ 42 U.S.C. 1396p(c)(1) ] to the extent that-
* * *
(B) the assets-
(i) were transferred to the individual's spouse or to another for the sole benefit of the individual's spouse,
(ii) were transferred from the individual's spouse to another for the sole benefit of the individual's spouse,
(iii) were transferred to, or to a trust (including a trust described in [ 42 U.S.C. 1396p(d)(4) ] ) established solely for the benefit of, the individual's child described in [ 42 U.S.C. 1396p(c)(2)(A)(ii)(II)[5] ], or
(iv) were transferred to a trust (including a trust described in [ 42 U.S.C. 1396p(d)(4) ] ) established solely for the benefit of an individual under 65 years of age who is disabled[.][6 ]
**276 The permissive transfers set forth at 42 U.S.C. 1396p(c)(2)(B)(i) and (ii) are important *594 here. They allow unlimited transfers between an institutionalized individual and her spouse (that is, between the institutionalized spouse and the community spouse). This is sensible: as discussed, the Medicaid Act's resource rules require the Department to begin its initial resource evaluation by computing "the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest ...." 42 U.S.C. 1396r-5(c)(1)(A)(i) ; see Blumer , 534 U.S. at 482-483, 122 S.Ct. 962.
Again, in plainer terms: there is no reason to penalize an interspousal transfer of assets because resources belonging to both spouses are combined in determining an applicant's eligibility . Because spousal resources are accounted for in the Medicaid eligibility process no matter which spouse holds them, there is no need to penalize a transfer from one spouse to the other.
In addition to interspousal transfers, the Medicaid Act does not penalize a transfer from either spouse to a third party if the transfer is "for the sole benefit of" the Medicaid applicant's spouse (the community spouse). 42 U.S.C. 1396p(c)(2)(B)(i) and (ii). Unlike interspousal transfers, however, this exception can have a much greater impact on eligibility, because resources that are "held" by a third party might not be considered countable **277 assets for purposes of Medicaid's financial eligibility determination. See 42 U.S.C. 1396r-5(c)(2)(A) ("In determining the resources of an institutionalized individual ... [,] except as provided in subparagraph (B) [concerning the CSRA], all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse ...."). This exemption is pivotal to the plaintiffs' Medicaid planning strategy; if the transfers of assets into the SBO trusts are not "for the sole benefit of" the community spouse, then the transfers should incur a divestment penalty.
Congress also provided specific transfer rules for two categories of assets: the purchase of an annuity and the purchase of a promissory note, loan, or mortgage. For annuities, 42 U.S.C. 1396p(c)(1)(F) provides that "the purchase of an annuity shall be treated as the disposal of an asset for less than fair market value"-that is, a penalized transfer-"unless ... (i) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual under this subchapter; or (ii) the State is named as such a beneficiary in the second position after the community spouse or minor or disabled child and is named in the first position if such spouse or a representative of such child disposes of any such remainder for less than fair market value." This provision ensures that if a community-spouse annuitant does not survive the annuity's term, the state agency, rather than a third-party beneficiary or heir (other than a minor or disabled child), will be paid the remaining annuity payments up to the total amount of Medicaid assistance paid on behalf of the institutionalized spouse.[7]
**278 See *595 Hutcherson v. Arizona Health Care Cost Containment Sys. Admin. , 667 F.3d 1066, 1070 (CA 9, 2012) ("We will give the plain meaning to the unambiguous language in § 1396p(c)(1)(F)(i), which allows states to reach a deceased community spouse's annuity for costs incurred on behalf of an institutionalized spouse.").
Additionally, 42 U.S.C. 1396p(c)(1)(G) provides that an annuity "purchased by or on behalf of an annuitant who has applied for medical assistance with respect to nursing facility services" will be treated as an "asset" unless the annuity is purchased with proceeds from certain retirement accounts or the annuity contract is irrevocable and nonassignable, the contract is actuarially sound, and the payments are equal during the term of the annuity. The Department has interpreted these latter requirements (irrevocable and nonassignable, actuarially sound, and providing for equal monthly payments) as applying to all annuities purchased with countable resources; otherwise, the transfer is subject to penalty. See Michigan Department of Health and Human Services, Bridges Eligibility Manual 401 (July 2014), p. 5.[8] The purchase of a community-spouse annuity that satisfies the requirements of 42 U.S.C. 1396p(c)(1)(F) and (G) -a "qualified" community-spouse **279 annuity-will not trigger a divestment penalty, because the transfer is for "the sole benefit of" the community spouse. 42 U.S.C. 1396p(c)(2)(B)(i) and (ii).
For the purchase of a debt obligation, 42 U.S.C. 1396p(c)(1)(I) provides, for purposes of the transfer rules, that "the term 'assets' includes funds used to purchase a promissory note, loan, or mortgage," unless the debt instrument: (i) has an actuarially sound repayment term, (ii) is payable in equal installments, and (iii) does not allow for cancellation of the balance upon the death of the lender. 42 U.S.C. 1396p(c)(1)(I)(i) through (iii). In plainer terms, if the debt instrument does not satisfy these requirements, the transferred assets (the assets used to purchase the note, loan, or mortgage) will be subject to a divestment penalty.
While there is considerably less caselaw addressing 42 U.S.C. 1396p(c)(1)(I) than that addressing annuities, when such transfers are challenged, courts have considered whether the transaction is bona fide or an attempt to circumvent the Medicaid eligibility and transfer rules. See Landy v. Velez , 958 F.Supp.2d 545, 554 (D NJ, 2013) ("To be bona fide, an informal cash loan must (1) be enforceable under state law, (2) be in effect at the time of the transaction, (3) contain an acknowledgement of an obligation to repay and (4) have a plan for repayment (5) which is feasible in light of 'the amount of the loan, the [borrower]'s resources and income, and the [borrower]'s living expenses.' "), quoting Social Security Administration, Program Operations Manual System , SI 01120.220(D)(1) through (5).
These annuity and debt obligation rules were added by the Deficit Reduction Act of 2005, PL 109-171 ; 120 Stat. 4 (the DRA). In enacting the DRA, Congress "sought to further close loopholes in the Medicaid Act." Hutcherson , 667 F.3d at 1069. The DRA achieved this **280 by "restrict[ing] the use of annuities by Medicaid applicants in order to prevent applicants from sheltering their assets in anticipation of Medicaid *596 eligibility." Carlini v. Velez , 947 F.Supp. 2d 482, 486 (D NJ, 2013) ; see also Morris v. Oklahoma Dep't of Human Servs. , 685 F.3d 925, 935-938 (CA 10, 2012) (explaining how the conversion of spousal resources into a stream of future payments for the community spouse exploits the Act's separate treatment of income postinstitutionalization). Such restrictions further Congress's interest in "preventing financially secure couples from obtaining Medicaid assistance." Blumer , 534 U.S. at 480, 122 S.Ct. 962.
All these restrictions make little sense, however, if 42 U.S.C. 1396p(c) and (d) allow married couples to immediately transfer unlimited assets to a community spouse, without incurring any divestment penalty, simply by placing assets into an SBO trust.
C. MEDICAID'S TRUST RULES
Section 1396p(d) provides a "comprehensive system of asset-counting rules for determining who qualifies for Medicaid." Lewis v. Alexander , 685 F.3d 325, 332 (CA 3, 2012). Enacted by the Omnibus Budget Reconciliation Act (OBRA) of 1993, PL 103-66 ; 107 Stat. 312, see Part III(A) of the majority opinion, the current trust rules responded to "Medicaid's original asset-counting rules, [under which] individuals could put large sums of money in trust, thereby vesting legal title to those assets in the trust and reducing (on paper) the amount of assets owned by the individual." Lewis , 685 F.3d at 332. "In the 1993 OBRA amendments, Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility." Id . at 333.
**281 The majority has explained well the general rules for revocable and irrevocable trusts. But one feature bears emphasis: Congress has specifically exempted three types of trusts from those general trust rules. See 42 U.S.C. 1396p(d)(4)(A) through (C).[9] Two of these "(d)(4) trusts"-special-needs trusts and pooled trusts ( 42 U.S.C. 1396p(d)(4)(A) and (C) )-allow a disabled beneficiary to receive assets without disqualifying the beneficiary for Medicaid assistance. The third, a qualified-income trust ( 42 U.S.C. 1396p(d)(4)(B) ), allows individuals in certain states to control the amount of income used to determine Medicaid eligibility. All of these trusts serve very different purposes than SBO trusts. But just as with the rules for annuities, the rules for these exempted (d)(4) trusts require that, upon the death of the trust beneficiary (or beneficiaries), any remaining trust assets must be used to pay back the state agency up to the amount of Medicaid financial assistance expended on behalf of the trust beneficiary or beneficiaries. See 42 U.S.C. 1396p(d)(4)(A), (B)(ii), and (C)(iv).
The plaintiffs' Medicaid planning strategy-SBO trusts-implicates the general rules for irrevocable trusts at 42 U.S.C. 1396p(d)(3)(B). As the majority explains, any property held in an SBO trust is not an available "resource" of the married couple for purposes of Medicaid's financial eligibility determination, because the trust is irrevocable and legal title is held by the third-party trustee; the trust property is therefore not countable, because it "is not held by either spouse." And because the terms of these SBO trusts require that any distribution be made to the plaintiffs' spouses (the community spouses) for the spouses' lifetimes, there can **282 never be "any circumstances under which payment from the [SBO] trust could be made to or for the benefit of" these plaintiffs. 42 U.S.C. 1396p(d)(3)(B)(i). *597 Normally, such a transfer would trigger the divestment penalty, as the property held in trust is "assets disposed by the [institutionalized] individual for purposes of" the transfer rules. 42 U.S.C. 1396p(d)(3)(B)(ii). But according to the plaintiffs, the transfer of marital assets into these SBO trusts are exempt from the divestment penalty, because they are transfers to a third party (the trusts) "for the sole benefit of" the community spouse. See 42 U.S.C. 1396p(c)(2)(B)(i) and (ii). In short, the plaintiffs' theory is that an institutionalized individual can achieve immediate (penalty-free) eligibility for Medicaid financial assistance by simply placing any assets over the eligibility limit in an irrevocable trust, and also avoid the divestment penalty that accompanies that kind of divestment, so long as any payments from the trust are made only to the community spouse during his lifetime.
The result: a perfect loophole to Congress's carefully constructed eligibility and transfer rules.
D. THE STATUTORY TEXT: "FOR THE SOLE BENEFIT OF"
I agree with the majority that "the individual" in 42 U.S.C. 1396p(d)(3)(B) refers to the Medicaid applicant.[10]
**283 But I doubt the plaintiffs' interpretive victory will ultimately prove to be an effective Medicaid planning strategy. The strategy only works if the plaintiffs can avoid a divestment penalty. The plaintiffs believe they can do so because their transfers of assets into the SBO trusts were "for the sole benefit of" the community spouses. 42 U.S.C. 1396p(c)(2)(B). The lower courts were never presented with this question because the Department had no reason to impose a penalty, given its conclusion that these plaintiffs did not satisfy the Act's eligibility criteria. The majority opinion sensibly declines to address the penalty issue. Because I see a significant hurdle for plaintiffs whenever this question is addressed, I write separately to explain.
Congress has not defined "for the benefit of [the institutionalized spouse]" in the trust rules. 42 U.S.C. 1396p(d)(3). Likewise, Congress has not defined "for the sole benefit of [the community spouse]" in the transfer rules. 42 U.S.C. 1396p(c)(2)(B). If words are not defined by statute, we give them their ordinary meaning. The definitions of "sole" and "benefit" are uncontroversial. For example, Merriam-Webster's Collegiate Dictionary *598 (11th ed.) defines the term "benefit" as "something that promotes well-being" and "useful aid." "Sole" is defined as "having no sharer" and "being the **284 only one." Id . Other dictionaries agree. And the statutory text gives us another clue: a payment "for the benefit of" an individual must mean something different than a payment "to" an individual, given Congress's use of both connected by "or" in 42 U.S.C. 1396p(d)(3)(B) ("to or for the benefit of the [institutionalized] individual") and 42 U.S.C. 1396p(c)(2)(B)(i) ("to the individual's spouse or to another for the sole benefit of the individual's spouse") (emphasis added).
So is a transfer of assets to a third-party trustee "for the sole benefit of" the community spouse if that transfer "benefits" the institutionalized spouse by allowing her to satisfy Medicaid's eligibility limits while avoiding the specific rules that apply to community-spouse annuities? And if the community spouse receives a payment from an SBO trust and then shares that payment with the institutionalized spouse, is that a circumstance in which "payment from the trust" is "made ... for the benefit of" the institutionalized spouse?[11]
**285 Even harder: what if an SBO trust names as a remainder beneficiary a person or entity other than the state agency? That is, if a third party can receive the remainder, is the transfer "for the sole benefit of" the community spouse?
The simplest answer might be "yes"-there are circumstances under which a distribution from an SBO trust to a community spouse is "for the benefit of" the institutionalized spouse, and there are persons other than the community spouse who might "benefit" from a transfer of assets into an irrevocable SBO trust, if that transfer and trust make the institutionalized spouse eligible for benefits. If that's right, then there are circumstances under which a distribution from an SBO trust to a community spouse is "for the benefit of" the institutionalized spouse and the assets *599 held in trust should be considered available resources or income for purposes of determining each plaintiffs' eligibility for Medicaid. And if there are persons other than the community spouse who might "benefit" from a transfer of assets into an irrevocable SBO trust, then the plaintiffs should be subject to a divestment penalty.
But that expansive interpretation-one that defines becoming eligible for Medicaid as a benefit-might **286 prove too much. That understanding would prohibit Medicaid planning strategies that Congress has endorsed. After all, the purchase of a qualified community-spouse annuity "benefits" the institutionalized spouse if the conversion of resources to income allows the institutionalized spouse to satisfy Medicaid's financial eligibility limits without incurring a divestment penalty. See Morris , 685 F.3d at 935-938. And, of course, the transfer rules themselves permit certain transfers to (d)(4) trusts, which might also benefit the institutionalized spouse in the eligibility determination. See 42 U.S.C. 1396p(c)(2)(B)(iii) and (iv).[12]
But the statutory requirement that the transfer be "for the sole benefit of" the community spouse is still a hurdle that the plaintiffs must overcome if they are to receive immediate financial assistance. On this point, the statute's plain language, and federal guidance, are instructive.
There are no federal regulations interpreting 42 U.S.C. 1396p. The Centers for Medicare & Medicaid Services (CMS),[13] however, has provided guidance on the meaning of "for the sole benefit of" in the State Medicaid Manual, which includes an explanation of the transfer rules:
For the Sole Benefit of.--A transfer is considered to be for the sole benefit of a spouse, blind or disabled child, or a disabled individual if the transfer is arranged in such a way that no individual or entity except the spouse, blind or disabled child, or disabled individual can benefit from the assets transferred in any way, whether at the time of the transfer or at any time in the future.
**287 Similarly, a trust is considered to be established for the sole benefit of a spouse, blind or disabled child, or disabled individual if the trust benefits no one but that individual, whether at the time the trust is established or any time in the future . However, the trust may provide for reasonable compensation, as defined by the State, for a trustee or trustees to manage the trust, as well as for reasonable costs associated with investing or otherwise managing the funds or property in the trust. In defining what is reasonable compensation, consider the amount of time and effort involved in managing a trust of the size involved, as well as the prevailing rate of compensation, if any, for managing a trust of similar size and complexity.
A transfer, transfer instrument, or trust that provides for funds or property to pass to a beneficiary who is not the spouse, blind or disabled child, or disabled individual is not considered to be established for the sole benefit of one of these individuals . In order for a transfer or trust to be considered to be for the sole benefit of one of these individuals, the instrument or document must provide for the spending of the funds involved for the benefit of the individual on a basis that is actuarially sound based *600 on the life expectancy of the individual involved. When the instrument or document does not so provide, any potential exemption from penalty or consideration for eligibility purposes is void.
An exception to this requirement exists for trusts discussed in § 3259.7 [concerning the trust exemption found at 42 U.S.C. 1396p(d)(4) for supplemental needs trusts and special-needs trusts]. Under these exceptions, the trust instrument must provide that any funds remaining in the trust upon the death of the individual must go to the State, up to the amount of Medicaid benefits paid on the individual's behalf. When these exceptions require that the trust be for the sole benefit of an individual, the restriction discussed in the previous paragraph does not apply when the trust instrument designates the State as the recipient of funds from the trust. Also, the trust may provide for disbursal of funds to other beneficiaries, provided the trust does not permit such disbursals until the State's claim is satisfied. Finally, "pooled" trusts may **288 provide that the trust can retain a certain percentage of the funds in the trust account upon the death of the beneficiary. [CMS, State Medicaid Manual , § 3257(B)(6) (rev. 64), p. 3-3-109.2 (emphasis added).]
The manual provides the following guidance on the use of irrevocable trusts and the meaning of "to or for the benefit of":
C. Irrevocable Trust - Payments From All or Portion of Trust Cannot, Under Any Circumstances, Be Made to or for the Benefit of the Individual.-When all or a portion of the corpus or income on the corpus of a trust cannot be paid to the individual, treat all or any such portion or income as a transfer of assets for less than fair market value ....
* * *
D. Payments Made From Revocable Or Irrevocable Trusts to or on Behalf of Individual.--Payments are considered to be made to the individual when any amount from the trust, including an amount from the corpus or income produced by the corpus, is paid directly to the individual or to someone acting on his/her behalf, e.g., a guardian or legal representative.
Payments made for the benefit of the individual are payments of any sort, including an amount from the corpus or income produced by the corpus, paid to another person or entity such that the individual derives some benefit from the payment. For example, such payments could include purchase of clothing or other items, such as a radio or television, for the individual. Also, such payments could include payment for services the individual may require, or care, whether medical or personal, that the individual may need. Payments to maintain a home are also payments for the benefit of the individual.
* * *
G. Use of Trust vs. Transfer Rules for Assets Placed in Trust.--When a nonexcluded asset is placed in a trust, a **289 transfer of assets for less than fair market value generally takes place. An individual placing an asset in a trust generally gives up ownership of the asset to the trust. If the individual does not receive fair compensation in return, you can impose a penalty under the transfer of assets provisions. [CMS, State Medicaid Manual , § 3259.6 (rev. 64), pp. 3-3-109.28 through 3-3-109.30 (emphasis added).]
The manual does not address the specific interpretation of *601 42 U.S.C. 1396p(d)(3)(B) that the plaintiffs advance,[14] but it offers insight. First, when evaluating whether there is "any circumstance under which payment from the trust could be made to or for the benefit of" the institutionalized spouse, the question is whether the payment is "paid to another person or entity such that the [institutionalized] individual derives some benefit from the payment." CMS, State Medicaid Manual , § 3259.6(D), p. 3-3-109.29.
The manual is entitled to respectful consideration because this interpretation is entirely consistent with the statutory text and the ordinary meaning of "sole" and "benefit." See Skidmore v. Swift & Co. , 323 U.S. 134, 139-140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (explaining when an administrative policy is entitled to deference). The question, then, is not whether the community spouse is free to share the payment with the institutionalized spouse, but whether the payment itself results in a direct benefit to the institutionalized spouse, such as a purchase of goods or services for the institutionalized spouse. Cf. Johnson , 357 F.3d at 408-409.
But there's more to do. As the manual explains, "[w]hen a nonexcluded asset is placed in a trust, a transfer of assets for less than fair market value generally takes place." CMS, State Medicaid Manual , **290 § 3259.6(G), p. 3-3-109.30. That is, the transfer is subject to a divestment penalty. This is because 42 U.S.C. 1396p(d)(3)(B)(ii) directs that for "any portion of the trust from which ... no payment could under any circumstances be made to the [institutionalized] individual," that portion "shall be considered ... to be assets disposed by the individual for purposes of" the transfer rules.
This point is critical. The plaintiffs believe that the transfer of assets into these SBO trusts is exempt from the divestment penalty because it was a transfer of assets "for the sole benefit of" the plaintiffs' spouses. I am not convinced.
As the manual explains, "[a] transfer, transfer instrument, or trust that provides for funds or property to pass to a beneficiary who is not the spouse ... is not considered to be established for the sole benefit of [the spouse]." CMS, State Medicaid Manual , § 3257(B)(6), p. 3-3-109.2. And the relevant period for determining whether the "funds or property ... pass to a beneficiary who is not the spouse" extends to "any time in the future." Id . If there is any person (other than the community spouse) who might stand to benefit from the transfer of assets into an SBO trust, the transfer results in a penalty. This fits with the dictionary definitions, too-if there is another person who might benefit from the transfer, the transfer is not for the "sole" benefit of the community spouse.
In these cases, the plaintiffs' SBO trusts generally reserved in the community spouse a testamentary power of appointment.[15] That is, if any plaintiff's **291 spouse *602 died before all property held in trust could be distributed to him, the remainder would be distributed according to the spouse's will. Thus, when the plaintiffs transferred their assets into these SBO trusts, there was the potential that, at some point in the future, a person other than the community spouses (the yet-to-be-determined remainder beneficiaries) might benefit from the transfer. Therefore, despite their name, these "solely for the benefit of" trusts were not for the sole benefit of the community spouse.[16]
What's more, the plaintiffs' interpretation of the Act makes little sense given the annuity rules and the (d)(4) trusts. Like these SBO trusts, an annuity presents the potential of a remainder beneficiary if the community spouse dies before the annuity's term. But Congress has **292 written specific affirmative rules permitting the use of community-spouse annuities as a valid Medicaid planning strategy-so long as the annuity is actuarially sound and the state agency is named as a remainder beneficiary.[17] And the remainder-beneficiary rule for annuities shows that Congress did not intend to create an easy alternative with all the advantages and none of the disadvantages. See, e.g., Breighner v. Mich. High Sch. Athletic Ass'n, Inc. , 471 Mich. 217, 232, 683 N.W.2d 639 (2004) ("[A] statutory term cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme."). Likewise, where Congress has permitted transfers to certain (d)(4) trusts free from penalty, see 42 U.S.C. 1396p(c)(2)(B)(iii) and (iv), Congress has explicitly required a payback mechanism in the recipient trust. See note 7 of this opinion.
E. THE MEDICAID ACT AS A WHOLE
As the Supreme Court explained in Blumer , "[e]ach participating State develops a plan containing reasonable standards for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and the Secretary of Health and Human Services." Blumer , 534 U.S. at 479, 122 S.Ct. 962 (cleaned up). And those standards must "comply with the provisions **293 of [ 42 U.S.C. 1396p ] ...." 42 U.S.C. 1396a(a)(18). If the plaintiffs' interpretation of the Act is correct, SBO trusts would be available as a Medicaid planning strategy in every state that has *603 elected to cover the medically needy. Yet no other jurisdiction has endorsed the legality of this type of Medicaid planning. Rather, the only appellate court to have even considered such a theory rejected it, albeit on other grounds. Johnson , 357 F.3d at 408-409.
If the plaintiffs were successful in avoiding the divestment penalty, their planning strategy would make meaningless the complex set of rules governing Medicaid eligibility. Consider, for example, an irrevocable trust that is funded with marital assets after the look-back date. The hypothetical trust provides that the third-party trustee must not make any distribution to the community spouse until after the Department has made a determination on the institutionalized spouse's eligibility (which must be made within 45 days from the date of application, see 42 CFR 435.912 ). The hypothetical trust further provides that, once an eligibility determination has been made, the trustee must immediately distribute all property to the community spouse. See 42 U.S.C. 1396p(d)(2)(C)(ii) and (iii) (providing that the trust rules "shall apply without regard to ... whether the trustees have or exercise any discretion under the trust [or] any restrictions on when or whether distributions may be made from the trust ...."). Such a trust would serve as a vehicle through which assets could be placed during the application, and then passed directly to the community spouse once an eligibility determination is made.
The plaintiffs argue that this transfer would not trigger a divestment penalty, because it would be for "for the sole benefit of" the community spouse. And **294 there is no dispute that the distribution of assets to the community spouse would not be imputed to the institutionalized spouse; that part is settled. See 42 U.S.C. 1396r-5(b)(2) and (c)(4) ; Blumer , 534 U.S. at 480-481, 122 S.Ct. 962. Thus, the value of the assets placed in the trust would be sheltered from the initial resource evaluation, and the distribution would not affect the institutionalized spouse's continued eligibility, nor would it change the level of financial assistance provided by the Department. The only practical restriction is that the trust property would be inaccessible to the community spouse for the period it would take the Department to process the application. Aside from that minor inconvenience, a married applicant can evade virtually every restriction that Congress has placed on Medicaid financial assistance. There would be no limitation on the amount of assets that a Medicaid applicant could transfer penalty-free to her spouse, virtually immediately, not subject to the repayment requirements for (d)(4) trusts and trust-like devices such as annuities, and shielded from Medicaid's initial resource assessment. That result is inconsistent with the statute, especially given that Congress has already enacted complex rules that "shelter[ ] from diminution a standard amount of assets" (the CSRA). Blumer , 534 U.S. at 478, 122 S.Ct. 962 ; see also Breighner , 471 Mich. at 232, 683 N.W.2d 639. But our determination requires us to consider the entire text, not isolated parts lifted out of context. See Scalia & Garner, Reading Law: The Interpretation of Legal Texts (St. Paul: Thomson/West, 2012), p. 167 ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."). **295 II. CONCLUSION
In the Medicaid Act, Congress has balanced two competing policies: "protect[ing] community spouses from 'pauperization' while preventing financially secure couples *604 from obtaining Medicaid assistance." Blumer , 534 U.S. at 480, 122 S.Ct. 962. These policies are well reflected in the (admittedly complex) statutory scheme. I agree with the majority that "the individual" in 42 U.S.C. 1396p(d)(3)(B) refers to the Medicaid applicant. But if the plaintiffs' transfers trigger the divestment penalty, it is not likely they will view this planning strategy as a success. The majority is correct to leave this question for a case in which it has been presented by the parties. I address it here only to caution individuals who might consider forming irrevocable trusts in an effort to achieve Medicaid eligibility, especially when other planning strategies are available, permission for which is well settled.
Cavanagh, J., did not participate in the disposition of this case because the Court considered it before she assumed office.

"The plaintiffs" refers to the original plaintiffs who began these proceedings.

The term "assets" encompasses both "resources" and "income." 42 U.S.C. 1396p(h)(1). While the parties use the term "countable assets" to refer to Medicaid's nonincome eligibility criteria, it should be understood that, for purposes of determining financial eligibility, "resources" and "income" are evaluated differently. See 42 U.S.C. 1396r-5(b) and (c) and Part I(A) of this opinion.

The term "institutionalized spouse" refers to "an individual who ... is in a medical institution or nursing facility ... and ... is married to a spouse who is not in a medical institution or nursing facility[.]" 42 U.S.C. 1396r-5(h)(1). The "community spouse" is "the spouse of an institutionalized spouse." 42 U.S.C. 1396r-5(h)(2). Elsewhere, Congress has used the term "institutionalized individual" to refer to "an individual who is an inpatient in a nursing facility ...." 42 U.S.C. 1396p(h)(3). Congress, however, has not provided a specific definition for the spouse of an "institutionalized individual," presumably because 42 U.S.C. 1396p (unlike the spousal-impoverishment provisions) applies to Medicaid applicants regardless of their marital status. More confusing yet, Congress in 42 U.S.C. 1396p uses undefined terms such as "an individual," "the individual," and "the individual's spouse."

Here, 60 months before plaintiffs' dates of application.

That is, a child who is under 21, blind, or disabled.

Additionally, the Medicaid Act permits an individual to transfer his or her home without incurring a penalty, so long as the transferee is the individual's spouse or, under specific conditions, close relatives. 42 U.S.C. 1396p(c)(2)(A). While the value of an individual's home is generally not included in the initial resource evaluation, a home is considered an "asset" for purposes of the transfer rules. See 42 U.S.C. 1396p(c)(5) ; 42 U.S.C. 1382b(a)(1). Thus, a transfer of the home after the look-back date will incur a divestment penalty, unless the transfer is specifically permitted under 42 U.S.C. 1396p(c)(2)(A).

Likewise, Congress has required a state payback provision to be included in any trust that is exempt from the general trust rules. See 42 U.S.C. 1396p(d)(4). Thus, while certain transfers of assets into exempt trusts are permitted penalty-free, see 42 U.S.C. 1396p(c)(2)(B)(iii) and (iv), those assets are still subject to a Medicaid payback. The only nonpenalized transfer of assets not subject to Medicaid payback, other than transfers "for the sole benefit of" the community spouse, are transfers directly to a blind or disabled child and the transfer of a home under specific conditions. See 42 U.S.C. 1396p(c)(2)(B)(iii) (incorporating the description of a blind or disabled child in 42 U.S.C. 1396p(c)(2)(A)(ii)(II) ); 42 U.S.C. 1396p(c)(2)(A).

The Medicaid Act also requires an applicant to disclose in her application any interest she or her spouse has in an annuity, regardless of whether the annuity is countable as a resource. See 42 U.S.C. 1396p(e).

And certain transfers into these (d)(4) trusts are exempt from the divestment penalty. See 42 U.S.C. 1396p(c)(2)(B)(iii) and (iv).

The plaintiffs emphasize that Congress did include "the individual's spouse" within what the majority describes as the "any-circumstances rule" of 42 U.S.C. 1396p(d)(3)(B), as Congress did with the comparable Supplemental Security Income (SSI) provision. While my analysis differs from that of the Court of Appeals, I agree with the panel that Congress intended for spousal resources to be evaluated jointly and that the interpretation urged by the plaintiffs runs counter to that intent, especially given the spousal-impoverishment provisions. The majority concludes that this was not a mere oversight because of Congress's inclusion of "the individual's spouse" in the rules governing the SSI program. Maybe. But I'm not as convinced as the majority that the omission was intentional. As the majority observes, "the Medicaid trust rules in 42 U.S.C. 1396p(d) were added by OBRA 93, six years before Congress added the SSI trust rules in 42 U.S.C. 1382b(e) ...." In other words, when Congress enacted 42 U.S.C. 1396p(d)(3)(B), it was writing on a clean slate-there was no comparable SSI statute. And Congress has not amended 42 U.S.C. 1396p(d)(3)(B) at any time since. But even if Congress intended for the SSI rules to operate differently, or if instead Congress was putting a finer point on what it thought to be the existing Medicaid rule (and should have also amended that rule), I nevertheless agree with the majority that the Act's reference to "the individual" in 42 U.S.C. 1396p(d)(3)(B) unambiguously refers to the Medicaid applicant.

So thought the United States Court of Appeals for the Third Circuit in Johnson v. Guhl , 357 F.3d 403, 408-409 (CA 3, 2004). Johnson concerned the use of so-called "community spouse annuity trusts" (CSATs) in the state of New Jersey. CSATs, like these SBO trusts, were irrevocable and "designed to provide a stream of annuity payments to the community spouse for the duration of his or her life." Guhl , 357 F.3d at 406. If the trust named the state agency as the first remainder beneficiary, New Jersey would not consider the trust property as a countable asset. Id . The state changed its policy after the federal Department of Health and Human Services advised that such trusts should, in fact, be considered countable assets. Id . The plaintiffs challenged this interpretation. The Third Circuit agreed with the state:
As this is a question of statutory interpretation, we begin (and end) our inquiry with the relevant statute, 42 U.S.C. § 1396p(d)(3)(B). That provision provides, in subsection (i), that "[i]n the case of an irrevocable trust-if there are any circumstances under which payment from the trust could be made to or for the benefit of [the institutionalized spouse whose assets are used to establish the trust], the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual. ..." Both parties agree that CSATs are irrevocable trusts. They are generally funded with marital assets (assets that belong to both spouses). Moreover, CSATs are designed so that the corpus and the income on the corpus will provide the community spouse a stream of payments. Once the community spouse receives these payments, there is nothing preventing her or him from sharing them with the institutionalized spouse as well. Section 1396p(d)(3)(B)(i) thus squarely covers CSATs-as "circumstances [exist] under which payment from the trust could be made to or for the benefit of" the institutionalized spouse-and deems them countable resources. Accordingly, we affirm the District Court ruling that plaintiffs' CSAT assets are countable resources. [Guhl , 357 F.3d at 408-409 (alterations in original).]

But here too, the transferred assets may be subject to a payback mechanism, because that is a condition of all the (d)(4) trust exceptions. See Part I(B) of this opinion.

At the federal level, the Medicaid program is administered by the Secretary of Health and Human Services, who in turn exercises his authority through CMS.

See generally CMS, State Medicaid Manual , § 3259, pp. 3-3-109.24 through 3-3-109.38.

The Lollar Trust, for example, provided the community spouse with a special testamentary power of appointment for any balance held in trust. See Lollar Trust, Section 3.2. The Hegadorn Trust directed that, if the community spouse predeceased plaintiff Hegadorn, the "Trustee shall distribute the remaining trust property to the trustee of the SPECIAL SUPPLEMENTAL CARE TRUST FOR MARY ANN HEGADORN "; otherwise, any balance would be administered under the terms in the community spouse's will. Hegadorn Trust, Sections 3.2-3.4. The Ford Trust provided the community spouse with a special testamentary power of appointment limited to his heirs; if that power was not fully exercised, the trustee was directed to "divide the remaining Trust property ... into separate trusts, equal in value, one for each living Child and one for then living Descendants, collectively, of each deceased Child." Ford Trust, Section 3.2.
The payment terms of the trusts are less clear; while all the trusts require the trustee to make distributions on an "actuarially sound" basis, the trustee is not prohibited from distributing all of the trust property nearly immediately, in a lump-sum payment, contrary to the requirements placed on annuities. See Lollar Trust, Section 2.2; Hegadorn Trust, Section 2.2; Ford Trust, Section 2.2.

The possibility of a remainder beneficiary is always present in a trust, either as provided for in the trust instrument or by operation of law. If the plaintiffs' SBO trusts did not include a residuary clause, any property held in an SBO trust would revert to the settlor (or the settlor's heirs) upon the death of the community spouse. MCL 555.18. Perhaps, then, the transfer of assets into an SBO trust should always result in the imposition of a divestment penalty.

The only circumstance in which a third party might stand to "benefit" from a qualified community-spouse annuity is if that party is named as a second (or later) remainder beneficiary and the state agency is fully paid back for all financial assistance provided to the institutionalized spouse. But the annuity must also be irrevocable, actuarially sound, and paid out in substantially equal monthly payments; otherwise, the transfer will be penalized. See Part I(B) of this opinion. A community-spouse annuity is thus an unreliable strategy for passing wealth to others, to say the least, as it requires the premature death of the community spouse.